THE STATE OF IOWA *ex rel.*, CLARK, DODGE & CO. v. THE CITY OF DAVENPORT.

1. ALLEGATIONS AS TO RECORD. That a pleading raises an issue as to the character of a record of the court in which such pleading is filed can not be assigned as ground for demurrer. Issues as to the existance or contents of records may be raised by pleadings, and must be determined upon evidence.

2. CORPORATE INDEBTEDNESS: MANDAMUS. In the absence of a special allegations, a city council can not be compelled by mandamus to collect a tax to pay a debt held in its original form, to the exclusion of other indebtedness of the same nature.

3. SAME: SPECIAL INDEBTEDNESS. When judgment is recovered upon coupons attached to bonds issued under a special law or contract, in which it is made obligatory upon the council of the municipal corporation by which they were issued, to levy, collect and place in the treasury the means to meet the interest thereon, and their ultimate redemption, mandamus will lie to compel the performance of this duty as well before as after the issuing of execution.

4. SAME: CITY OF DAVENPORT. Under §§ 7 and 8 of the act amending the charter of the City of Davenport, approved January 22d, 1855, it is made the duty of the council of said city, to provide for the payment of the interest accruing on the indebtedness of said city, which had been created prior to the date of said act, by the levy and collection of a special tax when the ordinary revenue of the city was inadequate to the payment of the ordinary expenses of the city, and such interest; and after judgment for such interest, the council may be compelled by mandamus to perform this duty before execution is issued and returned *nulla bona*. *Alliter* as to bonds issued after that date, without stipulations for such special levy.

5. SAME: SPECIAL TAX. The duty to levy a special tax, and set apart the proceeds thereof for a special purpose will not be discharged by the levy of a general tax. It can be performed only by a levy and

proceedings to collect, made in good faith, and by setting apart the proceeds when collected, for the special purpose.

6. SAME: CORPORATION SCRIP. The judgment creditor of a city, cannot be compelled to take in payment of his judgment, the scrip or ordincy evidences of indebtedness of such city. Under § 1896 of the Code of 1851, he may elect to do so.

7. EXTENSION OF TIME: CONSIDERATION. The payment of a part of a debt is not a consideration which will support a promise to forbear to sue, or press the collection of the balance.

*Appeal from Scott District Court.*

TUESDAY, OCTOBER 22.

MANDAMUS. From the information and alternative writ it appears, that on the 23d of February, 1860, the relators recovered a judgment against the city for over $10,000, on the coupons or interest notes of the city; that an execution issued upon this judgment, which was returned "No property found;" that it was the duty of certain officers of the corporation to provide for the payment of said judgment, and to levy a tax for that purpose; that though requested they had neglected to discharge this duty. The command of the writ was, to levy, collect and place in the city treasury a sufficient amount of money to pay said judgment, with interest and costs, or show cause to the contrary.

The return to the alternative writ sets up some fifteen causes why the peremptory writ should not issue. To this return, relators demurred, and also moved to set the same aside for insufficiency. The demurrer and motion were sustained to all the causes except the 11th, 12th and 13th, and overruled as to these, and from this ruling relators appeal. These causes are in substance as follows:

11th. Respondents deny that the execution was returned, "No property found," but aver that the return was: "Returned by order of the plaintiff's attorney, for renewal;" deny that they have neglected and refused to provide for

the payment of said judgment, or that they have neglected and refused to levy as early as practicable a tax for such purpose.

12th. That the city valuation of taxable property for the year 1860 was $3,689,409.29-100; on the 6th of June 1860, the city council levied upon said valuation a tax of five mills on the dollar, for ordinary expenses and a special tax of a like amount to pay the semi-annual interest on the debt created on the 22d of January, 1855; making in the aggregate ten mills on the dollar; that the assessment roll and warrant were on the 31st of July, 1860, placed in the hands of the proper city officer for collection, without delay; that there is due, and delinquent, of the taxes for 1859, $18,692 11-100; that the collecting officer has the warrant for the same in his hands, and is proceeding to collect the same as fast as practicable; that he has advertised the real estate upon which taxes are delinquent for 1859, for public sale ; that the revenue of the city from other sources for 1860, will, in the belief of respondents, amount to $22,500, which with the aggregate of the taxes assessed will, in their opinion, be amply sufficient to pay said judgment; the ordinary city expenses for the current year, as they believe, not exceeding four thousand dollars.

13th. That after the rendition of the judgment, the relators and the city made an agreement, by which it was agreed that the city should pay relators one third part of the said taxes collected, monthly in cash, to be applied on the foregoing judgment, and the judgment of one Kinseller, in such proportion as the attorney for such judgment plaintiffs should determine ; in consideration of which the relators undertook to stay further proceedings and " wait for the payment of whatever amount of said judgment should not be paid off and satisfied by the monthly *pro rata* payments as aforesaid; " that in pursuance of this agree-

ment, the city had paid to relators attorney one third of all taxes collected in cash, and are ready and willing in all respects to comply therewith, as fast as the taxes for the current year can be realized.

*Grant* for the appellants.

*Jas. T. Lane* for the appellee.

WRIGHT, J.—It will be observed that the 11th cause is in substance a denial of the matter of inducement stated in the writ. True there is no denial of the allegation that it was the duty of the officers of the corporation to provide for the payment of the judgment, and to levy a tax for that purpose. But it is denied that the execution was returned *nulla bona*. And as to this part of the return, the relators say : *First,* The execution, with the sheriff's return thereon, was made a part of the information and was a part of the records of the court where this proceeding was instituted ; and that though respondents might deny the truth of the return, they can not controvert the fact of what the return is, as it stands plainly inscribed upon the proper records of the court.

In the settlement of the material points in this case, the determination of the one here presented is not very important, but as it is raised, we notice it. It is well to bear in mind that the question is raised by demurrer. There was an appearance by respondents (the city appeared by her officers,) and the parties are by their pleadings attempting to settle the issues of fact arising in the case. It is not as if there was a default or a decree *pro confesso*, as in *Harrison* v. *Kramer*, 3 Iowa 543. On the contrary, while the relators inform the court that from the records a certain fact appears, the respondents take issue thereon ; in effect say *nul tiel record*, and thus an issue of fact is raised which is to be determined from the record. And this issue it was competent

to present.  If from the record attached and made a part of the case, the return was as claimed by the relators, then the issue, as made by respondents would be decided against them.  But because this issue might ultimately be thus found would not make the return in denial bad upon demurrer.  It might occur that the truth of the relators position as to the record could be very fully and conclusively established by an appeal to the record, but to do this, the case is heard as upon testimony.  If, however, to issue an execution, and procure a return thereon of *nulla bona*, were essential to give the right to the writ of mandamus, such execution and return could be denied and put in issue by respondents, and it is no good ground of demurrer to the return presenting this issue, that the records attached to the information, showed such execution and return.

But it is as to this part of the case, in the *second* place insisted, that though relators had no judgment, or having one, though they had not issued execution thereon, the duty nevertheless, clearly devolved upon respondents to levy and collect a tax to pay this debt, and having failed to do so after being requested, they could be compelled to do so, by the writ of mandamus.

We labor under great difficulty in disposing of this question, for the reason that we are not advised by this record, of the nature of the bonds, coupons or interest notes referred to in the writ.  All that is stated on this subject is this :  In the writ, after reciting the judgment in favor of the relators, it is stated, in effect, that this judgment was obtained " on coupons or interest notes on the bonds of said city."  But when these bonds were issued, their terms, how or where they were to be payable, out of what fund, or in what manner this fund was to be raised, is not stated and no where appears.  It will not be claimed, of course, that if the duty devolving upon the city council was none other

than the general one to provide for the payment of the indebtedness of the city, they could be compelled by mandamus to levy and collect a tax to pay a particular debt held in its original form, to the exclusion of the other indebtedness of the same nature. (*State ex rel., &c.* v. *County Judge,* 5 Iowa 380.) If, however, these bonds were issued under a special law, or for some special purpose, and if the law or contract made it obligatory upon the council to levy, collect and place in the treasury the means to meet the interest thereon and their ultimate redemption, then this duty devolved as well before as after the issuing of execution, and the writ could properly issue to compel its performance. Upon the question, whether the performance of the act could be compelled before judgment, this court might not be united, and we therefore, reserve it until it arises, it being sufficient for this case to hold, that after judgment in the case supposed, the duty might be enforced by mandamus. The judgment determines by a solemn adjudication the right of the party to recover and to the payment of the debt.

Appellants present their view of the case under certain statutes, and to these we now direct our attention. And again we suggest the difficulty, resulting from the failure of the record to disclose the nature and character of these bonds. We can do no more, therefore, than state generally our views of these statutes.

By § 7 of the amendment of the charter of this city, (acts of 1855, p. 85,) it is declared, that the debts heretofore created and bonds issued by the city, amounting to $125,000, shall be legal and binding; and that the city council shall have the right to borrow money and issue bonds, which shall be binding upon the city; " Provided that no debt shall be created, the yearly interest upon which, together with the yearly interest upon any debt before created, shall exceed three fourths of the ordinary yearly revenue, unless the contracting of said debt shall be approved by a majority of

DECEMBER TERM, 1861. 341

The State of Iowa ex rel. Clark, Dodge & Co. v. The City of Davenport.

the voters of said city, who may vote upon the question to be submitted by the city council, in such manner as said city council may direct."

" § 8. Whenever there is a deficiency in the ordinary revenue of the city, after the payment of the ordinary city expenses, to pay the semi-annual interest on the debt already created, the city council shall levy a specific tax upon the assessment roll of the current year to pay said interest."

"§ 9. All the powers provided in the Code, for the organization of cities, are hereby conferred on the City of Davenport."

By the Code, § 665, it is provided, among other things, that a charter may confer upon the corporation the power to levy and collect taxes not to exceed *one per centum per annum* on all property assessed.

If these bonds are part of the debt " already created," as designated by § 8, above quoted, then it was clearly the duty of the city council to levy a specific tax to pay the semi-annual interest, if there was a deficiency in the ordinary revenue, after paying the ordinary expenses. And this duty devolved upon the council, without the issuing of an execution and return of *nulla bona*. If the council failed to do this, after being requested, relators would be entitled to the writ of mandamus to compel the performance of the act. If, however, the bonds were issued after that time, and there was nothing in the vote authorizing their issue (if a vote was had under § 7,) or in the bonds themselves, obligating the city to make the specific levy, then the duty was not by these sections imposed, and its performance could not be compelled. If the duty was imposed, then, it would not be performed in our opinion, by merely making the levy and providing generally for the collection of a tax, but it should be specific, and an order made, setting it apart for the purpose of paying the particular bonds, or interest, or both.

What is meant by this is, that it should be treated throughout as a separate and distinct fund, and placed in the hands of the treasurer as such, to meet the specific indebtedness. And we go further, and say that if a holder of such indebtedness, being in a condition to demand such levy and collection, asserts his rights and makes the demand upon the corporation, he has a right to require that the levy and collection shall be made, and a sufficient amount thereof set apart, for the payment of his debt. If this demand is refused, without good cause, then the duty may be enforced. Nor would he be compelled to take scrip or the ordinary evidences of indebtedness issued by the city, for or in payment of his judgment. He might, at his election do this, but he is not compelled to under § 1896, of the Code. It would be cruel mockery to the creditor who already had a judgment against a corporation, obtained on such evidences of indebtedness, to compel him to take payment therefor in similar paper. Though the debtor corporation may issue such scrip, the holder of the judgment is entitled, if he demands it, to his money, and if this is not in the treasury, a tax should be levied as early as practicable to meet the judgment, interest and costs. Payment in such scrip is not within the meaning of the law, a plain, speedy and adequate remedy. And this levy and collection, it would be the duty of the corporation to make, if there was no property subject to levy, without the return of an execution *nulla bona.*

When it is said that the corporation should have the means set apart for the payment of the specific debt, or a specific indebtedness, and that the levy and collection should be made for that purpose, it is not meant that they shall do more than what is their reasonable and legal duty. If in good faith the levy is properly made, and the proper officers act in the faithful discharge of their duties in the

collection of the same, and if when collected the same is applied to the payment of the specific debt, the law requires no more, and mandamus will not lie. And therefore if such a levy is made, and the officer is proceeding with such dispatch as the law requires and permits to collect the same, the duty can be no otherwise performed, and there is no fault.

But it is also shown by the 11th clause of the answer, that respondents have not neglected and refused to provide for the payment of relators' debt, and that they have not refused to levy, as early as practicable, a tax for such purpose. As we have seen, the mere levy of a tax is not sufficient. It must have been specific, and it was the duty of the council when requested, to order a sufficient amount set apart to be applied to the liquidation of the judgment. It was the duty of respondents to either show a compliance with the mandate of the writ, or excuse therefor. If they have not, as they allege, neglected nor refused to provide for the payment of this judgment, then they are not in default. If they have not failed to discharge their duty, when requested, then the writ was improperly issued and they should be discharged. Taking this part of the answer altogether, therefore, we can not say the court erred in overruling the demurrer.

II. As to the 12th clause, but little need be added to what has been said in considering the preceding one. Whether the debt of the relators was created on the 22d of January, 1855, does not appear. If it was not, then there is nothing to show that any tax has been levied to pay this judgment. Then again, the command of the writ is that they shall levy, collect and place in the treasury an amount sufficient to pay this debt. If this duty was already performed, then respondents were excused. That is to say, if a levy had been made, and the roll, with the proper warrant for its collection

placed in the hands of the marshal for collection, they were not required to do the same things again. But as we have seen, this alone was not sufficient. The mandate was to place the same in the treasury to meet this debt. Not, of course, that this was to be done before the collection could be made by due course of law. But the relators had a right to exact that a sufficient amount should be inviolable, set apart in advance, so that when collected it should be faithfully applied to the discharge of this debt. To do less than this would not be obeying the writ, nor would it be a compliance with the duty devolving upon the city council. We think, therefore, that the demurrer to this clause should have been sustained.

III. The 13th clause is nothing more than a showing that time was given for the performance of the contract. To support this promise, and make it binding, a consideration should be averred. Payment of a part of a debt is not a consideration, which will support a promise to forbear to sue, or press the collection of the balance. *Pabody* v. *King*, 12 Johns. 426; *Rix* v. *Adams*, 9 Verm. 233; *Russell* v. *Buck*, 11 Ib. 166; *Lowe* v. *Blair*, 6 Blackf. 282.

The showing was not sufficient in legal contemplation, therefore, and the demurrer to this clause should have been sustained.

The cause is affirmed as to the ruling upon the 11th clause, and reversed as to the others.