The Iowa Railroad Land Co. v. Carroll County.

REVERSED.

THE IOWA RAILROAD LAND COMPANY v. CARROLL COUNTY ET AL.

THE IOWA RAILROAD LAND COMPANY AND THE BLAIR TOWN LOT CO. v. SAME.

SAME v. SAME.

1. **Taxes**: WHEN LEVIED TO PAY JUDGMENTS: THEIR VALIDITY. The Act of March 18th, 1864, legalizes special taxes levied by the Board of Supervisors, prior to its passage, to pay judgments against counties and school districts, and which had before been unauthorized by law. (*The Iowa Railroad Land Company v. Soper et al.,* 112 *ante.*)

The Iowa Railroad Land Co. v. Carroll County.

2. ———: INJUNCTION: EQUITY. The collection of a road tax which was in fact legally levied but not certified to the Board of Supervisors within the proper time, by the township clerk, and was properly listed by the County Auditor, will not be enjoined by a court of equity. (*The Iowa Railroad Land Company v. Sac County*, 124 *ante*.

3. ———: WHEN PAID IN PART: RIGHT OF TAX-PAYER. The tax-payer has the right to pay the full amount of any one tax listed against him, while refusing to pay others: and where plaintiff deposited a sum of money with the County Treasurer, with instructions not to apply it to the payment of certain taxes, and the Treasurer, receiving no further instructions, after April 1st used it *pro tanto* for the discharge of the taxes which plaintiff had forbidden to be paid: *Held*, that plaintiff was not bound by the act of the Treasurer. and that the money should have been appropriated as plaintiff directed.

4. ———: TENDER OF: INTEREST. Where a tax-payer, in writing, tendered payment of all of certain specified taxes, and demanded receipts therefor, it was *held* that such tender would suspend the running of interest upon the taxes embraced in the tender.

5. ———: FOR THE SUPPORT OF THE INSANE. Section 45 of Chapter 109, Laws of 1870, which confers the only power vested in the Board of Supervisors to levy a tax for the support of the insane, gives no authority to levy a special and independent tax for this purpose. If a county be chargeable for the maintenance of insane persons, the amount required should be added to the State tax next to be levied.

6. ———: COUNTY BONDS: POWER TO ISSUE. The language, "if the debtor corporation issues no scrip or other evidences of debt," in Chapter 87, Laws of 1872, does not refer to its *power* to issue, but implies that if the corporation does not in fact issue the one or the other, it must levy a tax to pay the debt.

7. **Bonds**: POWER OF COUNTY TO ISSUE. This act of the legislature (Chap. 87, Laws of 1872) confers upon any county or other municipal corporation, against which a judgment has been rendered, irrespective of the population of such county or municipal corporation, or the character of the indebtedness upon which the judgment is based, the power to issue bonds in payment thereof, if the judgment creditor shall so elect, and the parties agree as to the character of the evidences of indebtedness.

*Appeal from Carroll District Court.*

TUESDAY, JUNE 30.

ACTIONS to restrain, by injunction, the collection of certain alleged illegal taxes levied on the lands of the plaintiffs. From the judgments rendered both parties appeal. The facts appear in the opinion.

*Isaac Cook* and *N. M. Hubbard*, for plaintiffs.

*Polk, Hubbell & Goode* with *J. C. Kelly*, for defendants.

MILLER, CH. J.—These three cases were argued and submitted together. In the first case the petition seeks to enjoin: 1. A county judgment tax of nine and one-half mills on the dollar valuation for the year 1869. 2. A judgment tax for the School District Township of Carroll of five mills on the dollar valuation for 1869. 3. A road tax of three mills on the dollar valuation for 1869.

In the second case it is sought to enjoin: 1. A county judgment tax to the extent of seven mills on the dollar for 1869, (on other lands than those embraced in the first case), out of a levy of nine and one-half mills. 2. A county judgment tax of seven mills on the dollar for 1870. 3. A judgment tax for the District Township of Carroll, of twenty-six and one-fourth mills on the dollar for 1870.

In the third case plaintiffs seek to enjoin: 1. An insane tax of two mills on the dollar, levied September, 1872. 2. A bond tax of three mills on the dollar, levied September, 1872. 3. A district township judgment tax of three mills on the dollar, levied November, 1872. 4. A county judgment tax of one and one-half mills on the dollar, levied January 15, 1873, in obedience to a writ of mandamus.

I. In respect to the judgment taxes, so called, which are alleged to be illegal, being special taxes levied to pay judgments rendered against the county, and also special taxes levied to pay certain judgments against the District Township of Carroll, in Carroll county, we have held in *The Iowa Railroad Land Company v. Soper et al.*, 112 *ante*, that the irregularities complained of by the plaintiffs in the levy of these taxes were cured and rendered legal and valid by the act of the General Assembly of March 18, 1874, entitled "An Act to legalize certain judgment taxes levied by counties and other municipal corporations in the State of Iowa;" and that such taxes were by that act made collectible in the same manner as other lawful taxes

1. TAXES: when levied to pay judgments: their validity.

are by law collectible. So far, therefore, as these taxes are concerned, plaintiffs are not entitled to have their collection enjoined.

The penalties imposed by law upon delinquent taxes should not be computed upon these judgment taxes prior to the first day of April, 1874, being the first month after the taking effect of the act legalizing such taxes. See *The Iowa Railroad Land Co. v. Sac County*, 124 *ante*.

II. Plaintiffs complain, also, in the first case, of a three mill road tax for 1869, which they allege to have been illegally placed on the tax lists for that year.

The township records show that the trustees, by a resolution entered of record, levied a road tax of three mills on a dollar for the year 1869. There was a failure on the part of the township clerks to certify the delinquent lists of road taxes within the proper time to the Board of Supervisors. Such lists, however, were, although not in regular form, filed in the county auditor's office, and the taxes by him placed on the tax lists. The plaintiffs do not claim that they have paid any of these road taxes. The matters complained of are of form and manner only. A court of equity will not enjoin taxes legally levied, and remaining due and unpaid, for mere irregularities in the manner of placing them on the tax books. *Cedar Rapids & M. R. R. Co. v. Carroll Co., post; The Iowa Railroad Land Co. v. Sac Co.;* 124 *ante*. The injunction was rightly dissolved in regard to these taxes.

III. On the 9th day of March, 1870, the plaintiff in the first case through its treasurer, W. W. Walker, paid to the County Treasurer of Carroll county the sum of $8,000, on account of taxes on land in that county, taking his receipt therefor. Without entering upon a discussion at length of the circumstances under which this money was received by the county treasurer, and his duty in respect to its application, it is sufficient to say that the evidence satisfies us that the treasurer received this sum of money with the understanding that he should and would apply it to the payment of such legal taxes, standing on the tax books against the

*2. ———: injunction: equity.*

*3. ———: when paid in part: right of payer.*

property of the plaintiffs, as should be by them directed. That no part of the money thus paid was to be applied to the payment of "county tax," "bridge tax," or any "illegal tax."

On the second day of April, 1870, the treasurer, in violation of the understanding as to the application of these funds in his hands, applied the same to the payment of the county, bridge, insane, judgment, and all other taxes charged against plaintiffs on the tax lists, to the extent of the money in his hands. This act was not authorized by plaintiffs, and could not bind them. The payment of the $8000.00 to the treasurer was in the nature of a deposit made with him to be applied as the plaintiffs should direct. They had the right to pay the full amount of any one tax charged against them on the tax lists (Revision, § 760), and they had the right to direct the treasurer, who held the money subject to their order, to what particular taxes he should apply it in payment. While the evidence does not show explicitly that at the time Gilley, the treasurer, made the application of this money, on the 2d of April, 1870, the plaintiffs had given him specific directions what particular taxes he should pay therewith, it very clearly appears that he had been previously directed not to apply it to the payment of county tax, bridge tax, insane tax, or any other tax which was illegal. More than this, at the time of the application of the money by the treasurer he had no affirmative instructions whatever from the plaintiffs to apply the money then, in payment of any taxes charged against them. It is claimed, however, that when the plaintiffs placed the $8000.00 in the hands of Gilley, the treasurer, they agreed to pay, by April 1st following, in money and warrants, the balance necessary to pay all of the legal taxes charged against them, and that, failing to do so by the time agreed upon, the treasurer had the right to make the application he did of the money in his hands.

This position is not tenable, for, if it be conceded that the treasurer was no longer bound to hold the money subject to the directions of the plaintiffs, still their legal right to have the money applied only in payment of such taxes as they should direct remained, and they had already expressly notified

the treasurer that it should not be applied to county, bridge, insane, or any illegal taxes. If, therefore, he then had authority to apply the money in his hands to the payment of the plaintiffs' taxes, it was his duty to apply it to those taxes, the payment of which was not forbidden, at least, until all except the forbidden taxes were paid. The evidence shows that if this had been done there would have been no money left to apply upon the forbidden taxes.

As before remarked, the act of the treasurer in applying the money of plaintiffs in his hands to the payment of taxes which he had been expressly directed not to pay, did not bind the plaintiffs. The act, as soon as made known to them, was promptly repudiated, and the tax receipts forwarded to them by the treasurer were also promptly returned to him.

IV. On the 30th day of June, 1870, the plaintiffs made an offer in writing to pay all of certain specified taxes charged against their lands for the year 1869, together with the interest then due thereon, and demanded receipts from the treasurer accordingly. This offer included the $8000.00 already paid to the treasurer, and proposed to return to him his receipt for that sum. As we have seen, the statute gave the plaintiffs the right to pay the whole of any particular taxes charged against them, as they saw fit and proper to do; this offer, therefore, would stop the running of interest upon the taxes included in the written offer. It is claimed, however, that the written offer thus made by plaintiffs shows that portions of the taxes, namely, county and bridge taxes, were proposed to be paid in county and bridge warrants, some of which, it is alleged, were illegal and void as against the county. If the tender was good for any tax specified in the written offer, it stopped interest on such tax, without reference to whether the tender was good as to other taxes specified. But, we think, the evidence fails to show that the warrants tendered were illegal, and, besides this, no objections were made to the warrants when the tender was made. The objection was, therefore, waived. Revision, § 1818.

*4. ——; tender of: interest.*

V. The petition in the third case alleges that the Board

of Supervisors of Carroll county, at their September session, in 1872, levied an illegal tax of two mills on the dollar, called an insane tax. It is averred that this tax was levied under the pretense of paying the expenses of patients in the Insane Hospital of the State from Carroll county; that the amount necessary for that purpose did not exceed $500, while the tax levied would produce the sum of $4,238.84 upon the valuation of the property in the county subject to taxation. The answer admits the facts stated in the petition.

5. ———: for the support of the insane.

Appellants allege, and insist in argument, that this tax is illegal for the reason that the Board of Supervisors had no authority to levy a special tax for this purpose.

The Thirteenth General Assembly passed an act, entitled "An Act for the government of the Hospitals for the Insane, defining the legal relations of insane persons, and providing for their care and protection," which is chapter 109 of the Session Laws of 1870. The 45th section of the act is as follows: "The superintendent shall certify to the Auditor of State, on the first days of January, April, July and October, the amount (not previously certified by him) due to the said hospital, from the several counties chargeable thereto; and said auditor shall pass the same to the credit of the hospital. The auditor shall thereupon notify the county auditor of each county so owing, of the amount thereof, and charge the same to said county; and the Board of Supervisors shall add such amount to the next State tax, to be levied in said county and pay the amount so levied into the State Treasury."

This section contains the only power conferred upon the Board of Supervisors to levy any tax for the support of insane patients. The amount certified to the county auditor, as being charged to the county, must be added to the state tax next to be levied in the county. It is to be made a part of the state tax and levied as such, and, when collected, is to be paid over to the state treasurer. No authority is given to the board to levy an independent or special tax, for such sum or rate as the board may in their discretion determine. The power and the mode of executing it are specifically set forth in the stat-

ute. The board may add the sum certified to the state tax and levy accordingly, but they have no power to levy a specific and independent tax for this purpose. The power conferred is to increase the rate of the state tax so as to include the sum certified in addition to the regular state tax. The action of the board in levying the specific "insane tax," so-called, was not the action authorized by the statute. The act done is not within the scope of the power conferred, but entirely another and different act from that authorized by the law. The levy of this specific tax must, therefore, be held invalid, and its collection should have been enjoined by the District Court.

We have considered and determined all of the questions presented in these cases with the exception of those relating to what is called "bond taxes" of three mills on the dollar of valuation involved in the last of these cases only. Those questions are disposed of in the following opinion by COLE, J.

The costs of these cases, both of this court and the court below, will be equally divided, and final judgment may be rendered in this court, if either party so elects, or the cases will be remanded with directions to the court below to render the proper judgment therein.

COLE, J.—The only question involved in this case, not already disposed of in the foregoing opinion, relates to the validity of a tax levied to pay the interest on certain county bonds, issued in 1872 for the purpose of funding previous county indebtedness. The petition alleges that the bonds were issued to fund judgment indebtedness, originally evidenced by county warrants payable from the ordinary revenues of the county; that the population of the county when the bonds were issued was greatly less than seven thousand. These facts are not controverted, and the question made is, whether the tax of three mills, levied in 1872 to pay interest on the bonds, is valid. This involves the power to issue the bonds. The District Court held the bonds legal, and the tax, therefore, valid. The plaintiff appeals.

Whether the county had the power to issue the bonds;

depends upon the construction of certain statutes, and in order to an intelligible discussion of the question, it is proper to set forth the several statutes in the order of their enactment.

The earliest statute bearing at all upon the question, is found in the Revision of 1860: " Sec. 3274 (1895). Public buildings owned by the State, or any county, city, school district or other civil corporation, and any other public property which is necessary and proper for carrying out the general purpose for which any such corporation is organized, are exempt from execution. The property of a private citizen can in no case be levied upon to pay the debt of a civil corporation. Sec. 3275 (1896). In case no property is found on which to levy, which is not exempted by the last section, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidences of debt, a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."

The following are sections one and two of Chap. 108, of the Acts of 1862, and which took effect July 4, 1862:

" SECTION 1. That in any organized county in this State, that has outstanding warrants which exceed in the aggregate the sum of one thousand dollars, over and above the amount of money then in the treasury that can be used in payment of said warrants, it shall be lawful for the Board of Supervisors of said county, a majority of all the members of the board voting therefor, to make an order submitting to the voters of the county, at the next general election, the question whether said county will fund its outstanding indebtedness, and, if a majority of all the votes cast shall be in favor of funding said indebtedness, the Board of Supervisors shall then make an order allowing the persons holding such warrants to return the same to the treasurer of said county, and receive the bonds of said county in lieu therefor: *Provided*, That the provisions of this act shall not apply to any indebtedness hereafter incurred, or warrants hereafter issued.

" SEC. 2. That when the Board of Supervisors of any county

shall have made the order mentioned in section one of this act, they shall cause to be issued bonds of the county in such sums, due at such time, and bearing such rate of interest as the board shall determine: *Provided*, That such bonds shall contain the name of the county and State; the amount for which the same shall be taken; the date of the order authorizing the issuance of said bonds; the rate of interest they shall bear, and shall be numbered consecutively and signed by the chairman of the board, attested by the clerk, with his seal thereto affixed: *Provided, further*, That no bonds shall be issued for any other sums than fifty dollars and one hundred dollars, nor become due in less than two 'nor run more than ten years, and in no case bear more than six per cent interest, and the interest shall be paid annually."

The subsequent sections provide for the keeping of a record of the bonds, and for their payment and cancellation, etc.

The next act is Ch. 43 of the Laws of 1870, which was approved March 30, 1870, and took effect by publication March 31, 1870, and is as follows: " Sec. 1. That to section 3275, of the Revision of 1860, there be added the following words: ' And when a tax has been so levied, and the same, or any part thereof, has been collected, the treasurer shall, on demand, without a warrant from the clerk of the Board of Supervisors, pay the same to the creditor, or his attorney, taking a receipt therefor, and if not demanded, may pay the same to the clerk of the court where the judgment was rendered, taking his receipt therefor.' Sec. 2. All acts or parts of acts inconsistent with this are hereby repealed."

The statute next in order of time, or rather, contemporaneous with the last, is Ch. 54 of the Laws of 1870, which was approved, March 30, 1870, and took effect by publication April 4, 1870, and is as follows: "Sec. 1. That in any county in this State having a population exceeding 3,000 inhabitants, the outstanding indebtedness of which, on the first day of January, 1870, exceeded the sum of five thousand dollars, the Board of Supervisors by a vote of two-thirds of the members thereof, shall be and they are hereby empowered, if they deem it for the public interest, to fund the same and issue bonds of the

county therefor, in sums not less than one hundred dollars, nor more than one thousand dollars each, having not more than ten years to run, and bearing a rate of interest not exceeding ten per cent. per annum, payable semi-annually."

The subsequent portions of the act prescribe the form of the bonds and coupons, their record, disposition, payment, etc. By an act, (Ch. 126 of Laws of 1872,) approved April 24, 1872, and which took effect May 1, 1872, the act last quoted was so amended as to insert 7,000 inhabitants instead of 3,000, and January 1872 instead of 1870.

And by Ch. 87 of Laws 1872, approved, April 22, 1872, and which took effect, by publication, April 28, 1872, it was enacted as follows: "Sec. 1. That section 3275 of the Revision of 1860, and chapter 43 of the acts of the Thirteenth General Assembly of the State of Iowa, be, and the same are, hereby repealed, and there is hereby enacted the following section in lieu thereof:

"Section 3275. In case no property of a municipal corporation against which an execution has issued is found, upon which to levy, or if the judgment creditor elect not to issue execution against such corporation, he is entitled to demand and receive of such debtor corporation the amount of his judgment and costs, either in the ordinary evidences of indebtedness issued by such corporation, or in bonds of such corporation of such character as the parties may agree upon; and, if the debtor issues no scrip, bonds or other evidences of debt, a tax must be levied, as early as practicable, sufficient to pay off the judgment with interest and costs; and when a tax has been so levied and the same, or any part thereof, has been collected, the treasurer shall, on demand, without an order from the Board of Supervisors, or warrant from the clerk thereof, pay the same to the creditor or his attorney, taking a receipt therefor, and, if not demanded, may pay the same to the clerk of the court where the judgment was rendered, taking his receipt therefor; and, if bonds shall be issued in payment of judgments as above provided, said bonds shall be issued in substantially the same form as is provided by chapter 54 of the acts of the Thirteenth General Assembly of the State of Iowa, entitled, 'An act to provide for the funding of county indebtedness, and for the

payment thereof,' and bonds shall draw interest at a rate not to exceed ten per cent, and both principal and interest shall be and become due, and shall be payable in the same time and manner, as provided for in said chapter; and, if (not) paid when due, the same may be deposited with the Auditor of State, who shall take the same steps for the payment of said bonds, with the interest thereon, as is provided in said chapter 54, aforesaid."

Having thus before us the several statutes and amendments, in the order of their enactment, we may proceed to set forth their proper interpretation. The statute, or Sec. 3274, first above set out, is only necessary in order to more fully manifest the real purpose and meaning of the next section and the subsequent statutes; it casts a clear light upon the section following and the subsequent statutes, for it takes away the common law right to seize the individual property of the members of the corporation, and exempts certain of the corporate property, thereby leaving the judgment creditor wholly remediless, and shows that the subsequent statutes were enacted to provide another and equally efficacious remedy to the creditor, while it should be perfectly just and equal to all the members of the corporation.

As respects the next section, 3275, it is here only necessary to ascertain the meaning and force of the words in the last 6.——: COUNTY sentence of the section, to-wit: "and if the debtor BONDS: power to issue. corporation issues no scrip or evidences of debt, a tax must be levied, etc." This does not mean, if the debtor corporation *has no power* to issue scrip or evidences of debt; *first,* because every civil or municipal corporation does possess such power, inherently, since, without such power, it could not maintain its organization, or exist. *Hull & Argalls v. The County of Marshall, etc.,* 12 Iowa, 142, (*i. e.* 156); *The City of Galena v. Corwith,* 48 Ill., 423. *Second,* because this court has *held,* that where the corporation has the power, expressly given, to issue warrants and evidences of debt, the creditor is not compelled to take or accept such scrip or evidences of debt, but may refuse the same, although offered, and demand the levy of the tax. *The State ex rel. Clark et al. v. The City of Davenport,*

12 Iowa, 335, (*i. e.* 342); *Oswald v. Thedinga*, 17 Iowa, 13; *Porter v. Thompson et al.*, 22 Iowa, 391. Hence the language, "if the debtor corporation issues no scrip or evidences of debt," cannot mean, if it has no power to issue; but must mean, if the debtor corporation does not, in the particular case, issue scrip or evidences of debt, it must levy a tax. And this, whether such failure to issue the scrip is the result of its refusal to do so, or of the refusal of the judgment creditor to receive it. The language has reference to the conduct of the corporation, in any case wherein the remedy is sought under the statute; and if, *in fact*, the corporation issues no scrip, and it cannot do so if the creditor elects not to take it, then it must levy the tax.

The next act in order is Ch. 108, Laws of 1862, page 122. This provides that *any county* having *outstanding warrants*, exceeding in the aggregate one thousand dollars above the money in the treasury, may fund such indebtedness, if a majority of the people vote therefor, upon a submission at a general election, made by a majority of all the members of the Board of Supervisors.

It will be seen that the indebtedness, in order to be thus funded, must be upon *warrants* outstanding at the passage of the act, and that a *vote of the people* for such funding, is a condition precedent.

The next statute, in order of time, is Chap. 43, of Laws of 1870, page 43. This act simply amends the detail of Sec. 3275, so as to enable the judgment creditor to obtain his money, as the same is collected by the treasurer, without waiting until it is all collected, and without obtaining an order or warrant for the money.

The statute, arranged above, as next in order of time, is Chap. 54, Laws 1870, page 53, and it was passed or approved on the same day as the one last above, but it happened that it was published, in one of the two papers named, four days later. It authorizes any county having a population of three thousand, and an outstanding indebtedness, on January 1, 1870, exceeding five thousand dollars, to fund the same, upon a vote of two-thirds of all the members of the Board of

Supervisors. This law differs from Chap. 108 of Laws of 1862, in that the outstanding indebtedness may be in either warrants, judgments, claims or other matters; and the funding may be ordered by a vote of two-thirds of the members of the Board of Supervisors, without a submission to the people; and it is limited to counties having at least three thousand inhabitants, and to an indebtedness at a particular time. This statute also prescribes the precise form for the bonds and the coupons.

This act was amended by Chap. 126, Laws 1872, page 130, so as to limit it to counties having a population of seven thousand, and to the indebtedness existing on January 1, 1872, instead of 1870; and this act, so amending the one last above stated, was approved two days after the one next hereinafter stated, and was not published until three days after that.

The next act, being Chap. 87 of Laws 1872, page 92, was enacted in lieu of section 3275 and its amendments, by Chap. 43, Laws of 1872, both of which are repealed by it—this act containing all they contained and more. The true meaning 7. BONDS: power of county to issue. of this act is, that where a creditor of a municipal corporation—a county—has recovered a judgment against such county, he has the right to demand and receive from such debtor corporation the amount of his judgment and costs, in the ordinary evidences of indebtedness issued by such county—warrants, or in bonds of the county—of such character as the parties may agree upon. This statute differs from all the preceding, in that the power to issue the bonds applies only to indebtedness by judgment; whereas the others apply to outstanding indebtedness generally, of a fixed term; that if the creditor elects to take bonds, and the character of them is agreed upon, they may be issued by order of a majority of the Board of Supervisors, without a vote of the people, or a vote of two-thirds of the board; that the character of the bonds, as to their amount, the time they are to run, to whom payable, etc., are to be agreed upon by the parties; whereas, by Chap, 54, Laws of 1870 and its amendments, these matters were to be determined, within the limits prescribed, by the Board of Supervisors alone. In other words, this statute

gives an authority independent of and in addition to that given by the precedent statutes, to any county against which a *judgment has been rendered*, to issue bonds in payment thereof; and it gives a like authority to every other class of municipal corporations. Of course, the words, "if the debtor issues no scrip, bonds, or other evidences of debt," as used in this statute, should have the same meaning, as before given them by this court, when used in the section for which this is a substitute. That is to say, the statute is not limited in its application to municipal corporations, having no power to issue scrip, bonds or other evidences of debt, but it applies to all corporations having such power, and if they do not issue them when properly demanded, and the character is agreed, then a tax must be levied. See 12 Iowa, 142, and other cases cited *supra*.

A synopsis of the statutes and the meaning may be given, then, briefly, as follows: The law of 1862 authorized the voluntary issuance of bonds by any county, upon the vote of the people, to pay its indebtedness upon outstanding warrants. The safeguard here was the vote or sanction of the people. The law of 1870 authorized the voluntary issuance of bonds to pay its then outstanding indebtedness, no matter how evidenced, by counties having three thousand population, (afterwards, in 1872, made seven thousand), and upon a two-thirds vote by the Board of Supervisors. The safeguard here was the extent of population, the existence of the indebtedness on January 1, 1872, and the two-thirds vote. The law of 1872 authorizes the issuance of bonds by any municipal corporation to pay judgments recovered, when the creditor should elect to receive them, and a bare majority of the board agree to issue them. The safeguard here is the judicial investigation by, and the judgment of, the court. The two first were limited to counties; the last applies equally to all municipal corporations; and if it does not give to counties an independent power to issue bonds in the cases specified, to-wit: in payment of judgments, then it does not give an independent power to issue bonds to any municipal corporation; and if this is so, then cities, school districts, etc., have no power to

issue bonds, under any circumstances, because all the other acts are, by express language, limited to counties. That school districts are municipal corporations, see *Winspear v. The District Tp.,* etc., 37 Iowa, 542.

It will be observed that this last act, (Ch. 87, Laws of 1872), does not make it imperative upon any corporation to issue bonds upon the demand of the judgment creditor. The officers may always avoid it, by refusing to issue bonds, and by levying a tax to pay the judgment—in such case the corporation issues no bonds. And as the bonds are to be issued only when the parties agree as to their character, a failure to agree would excuse, and an agreement could not be enforced by mandamus, for it involves discretion.

It is, however, urged by appellants' counsel, that Ch. 87, of the Laws of 1872, must be construed in connection with the other statutes. This may be admitted, and by such construction we find that it relates to a different subject matter, to-wit: indebtedness by judgment; and authorizes their issuance in a manner different from the other statutes, to-wit: without a vote of the people, and without a two-thirds vote of the board, and only when a judgment has been rendered. And, if it be claimed that the "outstanding indebtedness" of Ch. 54, of the Laws of 1870, includes judgments also, then it may be replied that "specific provisions relating to a particular subject must govern in respect to that subject, as against general provisions, in other parts of the law, which might otherwise be broad enough to include it." *Felt v. Felt,* 19 Wis., 193; *Dettinton v. Brecon,* 26 Beavan, 533; *Pretty v. Solly,* Ib., 606; and this statute mentions and refers to judgments expressly and exclusively.

That "municipal corporations" includes and especially refers to counties, school districts and cities, etc., cannot admit of debate. See Bouvier's Law Dic., title Municipal Corporations; 2 Kent's Com., 275; *Jefferson v. Ford,* 4 G. Greene, 367, (370); *Hull et al. v. Marshall Co.,* 12 Iowa, 142, (154); *The State, etc., v. The County of Wapello,* 13 Iowa, 389, (404); *Bell v. The Railroad Co.,* 4 Wall., 598; *Pendleton Co. v.*

*Arny*, 13 Wall., 297, (304), and many other cases. It has never been construed otherwise.

The claim that this act, (Ch. 87, Laws 1872), does not give any independent power to issue bonds to pay judgments, is sufficiently answered in what has been already said. The plain language of the statute itself does give the power, and that too without reference to any other act; and there is nothing in any other act inconsistent with such language and purpose. And by construing all the acts together, they are consistent, and cover the whole field of legislation, if we give, as above, such construction of the power to issue bonds to pay judgments, as the language plainly imports. But further than this, the last statute above quoted is, in its terms and operation, a permanent statute, and applies to all judgments upon any indebtedness, wherever incurred; while all the other acts are temporary in their purpose and terms, and apply only to indebtedness incurred in a particular class of counties prior to their enactment; and in the course of ten years, at most, when by the statute, all such indebtedness would be barred, they would cease to have any practical effect. Hence, if it be held that this statute does not give any independent power to issue bonds, they could not be issued in payment of a judgment, unless the indebtedness existed prior to January 1, 1872, and against a county having seven thousand population. The language of the statute neither demands nor justifies such a construction, and to convert such a general and permanent statute into a local and temporary one, would be to encroach upon legislative functions.

AFFIRMED.