CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellee, v. JOHN B. SLATE, County Treasurer, Appellant.

No. 41073.

March 8, 1932.

A. B. Howland and Shaw & Yoder, for appellee.

Edwin Willcockson, County Attorney, for appellant.

Grimm, J.—The plaintiff company operates a line of railway passing through Keokuk County, Iowa. The Board of Supervisors of that county included in the taxes for the year 1928, payable in 1929, a levy of 1.82 mills, designated as "County Emergency Levy." This levy, as applied to the plaintiff's property, produced a tax of $773.22.

On March 5, 1929, this court held the Act creating said emergency tax void, because of defects in the title. (C. R. I. & P. Ry. Co. v. Streepy, 207 Iowa 851). The Legislature of the State of Iowa was then in session, and by an Act approved March 27, 1929 (Chapter 396, Acts 43rd G. A.), this emergency tax was legalized. Said chapter did not, however, become effective until April 2, 1929.

On March 29, 1929, the plaintiff railway company tendered to the defendant county treasurer, in legal tender, the first installment of the taxes upon its property in said county for 1928, payable in 1929, less the so-called county emergency tax, said tender amounting to $19,985.39. The county treasurer refused to accept the payment.

The validity of said Chapter 396 of the Acts of the 43rd G. A., passed as a legalizing Act, was questioned, and it was determined by this court on June 23, 1930, by sustaining said Legalizing Act. (C. R. I. & P. Ry. Co. v. Rosenbaum, 212 Iowa 227.)

On September 20, 1929, the railway company delivered to the defendant a voucher for $17,286.37 as the amount of the *second* installment of appellee's taxes, less the second installment of the county emergency levy.

On June 27, 1930, the railway company sought to pay the amount of the emergency levy with penalty thereon, but the appellant demanded penalties in the total amount of $1,629.91. This amount is made up as follows:

| | |
|---|---:|
| "Penalty on $20,372.00 from April 1 to Sept. 25, 1929 | $1222.32 |
| Penalty on $17,672.98 from Oct. 1 to Nov. 27, 1929 | 353.46 |
| Penalty on $386.61 from Apr. 1, 1929 to June 30, 1930 | 30.93 |
| Penalty on $386.61 from Oct. 1, 1929 to June 30, 1930 | 23.20 |
| Total penalty and interest demanded | $1629.91" |

I. We will first consider whether the railway company is liable for a penalty on the $20,372.00 from April 1st to September 25, 1929. It will be noted that said sum is the total of the first half of the railway company's taxes for the year 1928, payable in 1929, including one-half of the emergency tax.

By the decision in C. R. I. & P. Ry. Co. v. Streepy, 207 Iowa 851, filed March 5, 1929, the Act creating the emergency tax was held invalid because of insufficient title. The Legalizing Act passed by the 43rd G. A., affecting said emergency tax, did not become effective until after publication was completed, which was April 1, 1929, making the Legalizing Act effective April 2, 1929. In the meantime, on March 29, 1929, the railway company had tendered to the defendant one-half of its entire taxes for the year 1928, payable in 1929, in said county, less the emergency tax. Manifestly, at the time this tender was made, there was no emergency tax in existence. The Act under which an attempt was made to levy such a tax was declared void. The railway company, before the Legalizing Act became effective, tendered to the defendant one-half of the railway company's taxes for 1928, payable in 1929, and as the payment was refused, the defendant cannot now demand a penalty against

the plaintiff on said tendered tax unless it was incumbent upon the railway company to tender the first half of its entire taxes, including one-half of the emergency tax. The company was privileged, by statute, to pay one-half of its taxes at that time. As we shall see later, as the emergency tax was separable from the total of the claimed taxes, the company was privileged to contest the validity thereof. It could and did tender the entire first half of all other taxes in proper time. The defendant is not entitled to interest or penalty thereon.

It is the contention of the defendant that the tender made by the plaintiff of the first half of its taxes, less the emergency fund, was inoperative because, as defendant contends, no valid tender can be made unless the entire tax then due is tendered. In other words, it is the contention of the defendant that, in order to make a valid tender, it was incumbent upon the railway company, on or before March 1, 1929, to pay to the defendant one-half of the *entire* tax then charged against the company, including the emergency tax. On the other hand, it is the contention of the plaintiff that it had the right to tender that tax which it conceded to be correct and to refuse to pay that tax which it claimed to be illegal and test the legality of said latter tax.

The defendant relies largely upon section 7188 of the Code, which reads as follows:

"7188. *Receipt.* The treasurer shall in all cases make out and deliver to the taxpayer a receipt, stating the time of payment, the description and assessed value of each parcel of land, and the assessed value of personal property, the amount of each kind of tax, the interest on each and costs, if any, giving a separate receipt for each year; and he shall make the proper entries of such payments on the books of his office. Such receipt shall be in full of the first or second half or all of such person's taxes for that year, but the treasurer shall receive the full amount of any county, state, or school tax whenever the same is tendered, and give a separate receipt therefor."

Section 7210 provides, in substance, that it shall be the duty of every person subject to taxation to pay his taxes in full, or one-half thereof before the first day of March and the remaining half before the first day of September of each year.

It will be recalled that in this state we are one year behind in the payment of taxes. That is to say, in 1929, we pay the taxes for 1928.

Section 7211 of the Code provides, in substance, that in all cases where the half of the taxes has not been paid before the first day of April, the amount thereof shall become delinquent from the first day of April, and in case the second installment is not paid before the first day of October,' said installment then becomes delinquent.

Section 7214 provides a penalty after delinquency.

In Iowa Railroad Land Company v. Carroll County, 39 Iowa 151, this court had before it substantially this same question. The land company had paid to the county treasurer a certain sum of money, directing when to apply it in payment of taxes which were concededly due, and excluding certain taxes, the legality of which was in doubt. The treasurer credited the amount *upon all taxes* against plaintiff's property, claiming it had the right so to do. This court said:

"On the 30th day of June, 1870, the plaintiffs made an offer in writing to pay all of certain specified taxes charged against their lands for the year 1869, together with the interest then due thereon, and demanded receipts from the treasurer accordingly. This offer included the $8000.00 already paid to the treasurer, and proposed to return to him his receipt for that sum. As we have seen, the statute gave the plaintiffs the right to pay the whole of any particular taxes charged against them, as they saw fit and proper to do; this offer, therefore, would stop the running of interest upon the taxes included in the written offer."

In that case, some question arose about the legality of some county and bridge warrants which were tendered as payment, and the court afterwards said:

"If the tender was good for any tax specified in the written offer, it stopped interest on such tax, without reference to whether the tender was good as to other taxes specified."

It will be noted that Iowa Railroad Land Co. v. Carroll County, 39 Iowa 151, was decided on June 30, 1874, and that the law at that time provided for the payment of the *entire* tax

for a year at one time. This accounts for the phrase in said case, as follows:

"As we have seen, the statute gave the plaintiffs the right to pay the whole of any particular taxes charged against them, as they saw fit and proper to do; this offer, therefore, would stop the running of interest upon the taxes included in the written offer."

After expressly finding that it was the legal right of the taxpayer to have its payments "applied only in payment of such taxes as they should direct," this court further said:

"If, therefore, he (the treasurer) then had authority to apply the money in his hands to the payment of the plaintiff's taxes, it was his duty to apply it to those taxes, the payment of which was not forbidden (by the taxpayer), at least, until all except the forbidden taxes were paid. The evidence shows that if this had been done there would have been no money left to apply upon the forbidden taxes. As before remarked, the act of the treasurer in applying the money of plaintiffs in his hands to the payment of taxes which he had been expressly directed not to pay, did not bind the plaintiffs."

We find no merit in appellant's contention that the language of section 7188, hereinbefore quoted, and the holdings in the cited case of Iowa Railroad Land Co. v. Carroll County, 39 Iowa 151, required the plaintiff to pay the whole of the taxes appearing on the tax books against the plaintiff in order to save the payment of penalty. In other words, we think that when the railway company tendered, within the proper time, the first half of the taxes, exclusive of the first half of the emergency tax, it saved itself from any penalties on said first half thus tendered. This question has received attention in other jurisdictions.

In People ex rel. Stuckart, Collector, v. Chicago, L. S. & E. Ry. Co., 110 N. E. 720 (Ill.), it appeared that the railway company objected to certain items of taxes included in the tax list. It offered to pay the portions conceded to be valid, but refused to pay the items in dispute. The collector refused to accept payment of the portion not in dispute, and entered penal-

ties for the full amount. In holding that a penalty should not be charged upon the portion tendered, the court said:

"The objectors conceded certain amounts to be due and offered payment of the same to the treasurer, withholding only enough to cover the amount claimed to be illegal; but the treasurer refused, and at the hearing still refused, to receive anything less than the whole amount of the taxes. Counsel for the collector say that he was not required to receive anything less than the whole, but on what ground we are unable to understand, since the receipt of a part would not have been an admission that no more was due. The penalty is for taxes due and unpaid, and the taxpayer, having a right to object to part of the taxes as illegal, could have no remedy before the 1st day of May, but must wait until the collector applies for judgment, when he may file his objections and have his day in court. Judgment can only be rendered for the amount shown to be legally due, and if an objection to a part of a tax is overruled, the penalty is properly added to that part which is found to be due and unpaid. It was error to add penalties to the sums of money which were offered to the treasurer and which he refused to receive."

See also, People ex rel. Stuckart v. Lamb, 115 N. E. 720 (Ill.).

In State v. Hoffman, 201 S. W. 653 (Tex.), a similar question arose. The court said:

"Hoffman was under no obligation to pay the court house and jail tax if it was an illegal tax. The property of the citizen is subject to only valid taxation, and it is his right to resist that which is invalid. He is not required to pay the tax and be then put to a suit or compelled to resort to the political authority to recover it if adjudged illegal. The law affords him a more direct remedy. Where the taxes are separable, it is to properly tender the taxes admittedly due and then by appropriate proceeding present for the determination of the courts the validity of the tax assailed. Blanc v. Meyer, 59 Tex. 89; Land & Cattle Company v. Board, Tax Collector, 80 Tex. 489, 16 S. W. 312. That is the course Hoffman was entitled to pursue and which he did pursue. Equity will not lend its aid in such a proceeding

unless this proffer of the undisputed taxes has been made. * * * There can be no penalty without a default. There was no default here, because within the legal period Hoffman sought to pay the full amount for which he is here sued by making a legal tender to the collector.''

See also Northern Pacific Railway Co. v. Franklin County, 203 Pacific 27. (Wash.)

II. As previously stated, on September 20, 1929, the plaintiff forwarded to the defendant a voucher for $17,286.37, the amount of the *second* installment of plaintiff's taxes, less the second installment of the county emergency levy. The letter in which this remittance was made contained the following:

''I enclose herewith Rock Island Voucher No. 83632, in favor of Keokuk County, Iowa, for $17,286.37, in full payment of the *second installment of all taxes*, except 'Emergency' taxes, levied for the year 1928, against the property of the Chicago, Rock Island and Pacific Railway Company in your county, together with statements showing the taxes in detail.'' (Writer's italics.)

This check was received, and endorsed as follows:

''This check accepted in part payment of taxes due from the C. R. I. & P. Ry. Co. in Keokuk County for the year 1928, and will be applied as a partial payment of the total amount of taxes due.''

The check as thus endorsed was, in the due course of business, cashed by the bank on which it was drawn, but that the endorsement quoted above was placed thereon by the defendant was not learned by the plaintiff for a long time thereafter.

On October 23, 1929, the plaintiff wrote the defendant, as follows:

''Under date of September 20th, 1929, I sent you this company's voucher No. 83632 in favor of Keokuk County, Iowa, for $17,286.37, in full payment of the second installment of all taxes, except 'Emergency Taxes' levied for the year 1928 against the property of The C R I & P Ry. Co. in your county. The second installment of emergency taxes amounts to $386.61. As you know, our voucher No. 23137 in favor of your county for

$19,985.39 covering the first installment of 1928 taxes in your county, less 'Emergency Taxes' amounting to $386.61 was returned to me by you and I had the voucher cancelled. Therefore, as the matter now stands we have paid the second installment of our 1928 taxes 'Less Emergency.' but the first installment still remains unpaid, and it has occurred to me that we could handle this first installment payment in the same manner as we have this second installment. It would take about fifteen days for me to have a new voucher in the amount of $19,985.39 approved and audited and you could withhold the receipts for the time being and send me a letter receipt for such payment, the same as was done in the case of the second installment payment, and your county would have the use of the money. With reference to this so-called emergency tax, we intend to contest the matter in the courts, in fact we have a test case on the way in the Supreme Court now, and if the emergency levies are finally sustained, we expect of course to have to make payment of the balance due on the records, and on the other hand, if the Court finally holds that our contention is correct, we will expect that the emergency taxes remaining outstanding against our property on the records be cancelled and receipts issued to show full payment. Our attorneys have indicated that they think our test case will reach the Supreme Court for the December term. I trust this makes the matter perfectly clear to you and that you will realize we are not attempting to avoid the payment of any amount of taxes legally and properly due, and that you can see your way clear to handle the matter as above. Kindly let me hear from you at your earliest convenience, and greatly oblige.''

The defendant replied under date of October 25th, advising the railway company of the application of the former payment, and indicating a willingness to accept the $19,985.39 in the same manner. On November 23rd, the railway company sent to the defendant a voucher for the latter amount, with a letter as follows:

''As per your letter to me of Oct. 25th, I have had audited and hand you herewith, this company's voucher Registered No. 103105 in favor of Keokuk County, Iowa, for $19,985.39, in full payment of the first installment of all taxes levied for the year

1928, against the property of The CRI&P Ry. Co. in your county, less the emergency taxes. This voucher is similar to the one sent you with my letter of March 18th, and if you will kindly send me your letter receipt as mentioned in your letter of Oct. 25th, I will be obliged.''

Again the defendant saw fit to place a special endorsement on the voucher, as follows:

''This check is accepted as part payment of total amount of taxes due Keokuk County, Iowa, from C.R.I.&P. Ry. Co. for the year 1928, and will be applied on the total amount of taxes due including the emergency tax as levied for that year, and as per the receipt of the face hereof.''

This check was also cashed in the ordinary course of business. By this transaction, the plaintiff paid the first installment of all taxes levied against the company in said county for the year 1928, payable in 1929, except the emergency tax, as it had previously tendered to the defendant before delinquency.

The defendant should have applied the payment of September 20, 1929, for $17,286.37 to the payment of the second installment of the plaintiff's taxes, less emergency tax, and no penalty can be charged against said amount from October 1st to November 27th, 1929, as claimed.

If the defendant was not willing to accept the voucher in accordance with its express terms he should have returned it. He was not authorized to cash it and apply it except as definitely specified in the letter with which the draft was transmitted.

Under these circumstances and the holdings of this court and other courts, as previously cited, no interest or penalty is due on either the first or the second installment of taxes, less the emergency tax.

III. On June 27, 1930, the plaintiff attempted to pay the entire emergency levy in the amount of $773.22. The defendant refused to accept same, claiming a balance of $1,629.91 as previously shown. On October 8, 1930, the plaintiff tendered to the defendant the sum of $897.10, being the amount of the emergency levy, together with statutory interest and penalty thereon, and this the defendant refused. This payment should have been accepted and the plaintiff given a receipt in full of all

taxes of every kind and character in that county for 1928, payable in 1929.

There is nothing in the statutes of this state providing otherwise. Section 7188, when properly construed, does not provide that no payment of taxes may be received by the county treasurer unless all taxes are paid in full. As was said in State v. Hoffman, 201 S. W. 653 (Tex.):

"Where the taxes are separable, it (the taxpayer) is to properly tender the taxes admittedly due and then by appropriate proceeding present for the determination of the courts the validity of the tax assailed."

The language, as found in Section 7188, "Such receipt shall be in full of the first or second half or all of such person's taxes for that year, but the treasurer shall receive the full amount of any county, state, or school tax whenever the same is tendered, and give a separate receipt therefor," merely provides that if the whole of the first half is paid, the receipt shall show it is a payment in *full* of said first half, and likewise if the second half is paid prior to the time the second half is delinquent, the receipt shall show it is a payment in *full* of said second half. Similarly, if the whole of the tax is paid at once, the receipt shall show the payment is in *full*. The section also provides that the treasurer shall be required to receive the full amount of county, state or school taxes whenever the same are tendered and give a separate receipt therefor.

These are merely definite provisions as to the duties of the county treasurer. These provisions in no wise prohibit the county treasurer from receiving a portion of the taxes conceded to be valid and receipting therefor, in accordance with the facts, and permitting a taxpayer to litigate a separable tax which he considers illegal.

All other questions raised by the appellant have been fully considered and are found to be without merit.

The trial court correctly ruled, and it follows that the cause must be, and is,—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.