AMADEE VALLÉ, Defendant in Error, *v.* JAMES C. FARGO, Trustee of AMERICAN EXPRESS COMPANY, Plaintiff in Error.

February 28, 1876.

1. In a lease, dated June 7, 1849, for a term of twenty years, ending June 6, 1869, a covenant on the part of the lessee to pay "all taxes whatsoever to

be levied during the term, including the taxes for the year 1849," did not bind the lessee to pay the taxes for the year 1869. Though these were assessed before the end of the term, they were not leviable, either by the law in force in 1849, or by that in force in 1869, before June 7, 1869.

**2.** The word "levy" is synonymous with "collect," or "raise by execution," and is entirely distinct from "*assess*."

**3.** "Levy" and "assess" are not convertible terms as applied to taxation. To assess a tax is to declare it payable; to levy it is to collect it.

ERROR to St. Louis Circuit Court.

*Reversed and judgment.*

*Daniel Dillon*, for plaintiff in error, cited; Curtiss *v.* Miller, 17 Barb. 477, 479, 480; Sheppard *v.* Spaulding, 4 Metc. 416; Taylor's L. & T., sec. 518; Vin. Abr., title Surrender (A 2), sec. 7; Com. Dig., title Surrender (L); Shep. Touch. 300, 301; 3 Washb. on Real Prop. (3d ed.) 474; Bain *v.* Clark, 10 Johns. 424; Sperry *v.* Miller, 4 Seld. (N. Y.) 336; Meyer *v.* Lowell, 44 Mo. 328; Lawrence *v.* Fox, 20 N. Y. 268; Page *v.* Becher, 31 Mo. 466; Manning *et al. v.* Frazer's Admr., 27 Mo. 420.

*George P. Strong* and *T. W. Blackman*, for defendant in error, cited: Taylor's L. & T. (2d ed. 1852), secs. 372, 373, 516; O'Fallon *v.* Nicholson, 56 Mo. 240; Blossom *v.* Van Court, 34 Mo. 394; 5 Taun. 518; 1 Greenl. on Ev. (2d ed.) 55, 522, 523, 528, 531; 2 Ph. on Ev. (4 Am. ed.) 34, 35, note 268, p. 37; Arnold *v.* Arnold, 17 Pick. (Mass.) 8, 9, 13; Harvey *v.* Richards, 2 Gall. 229; Burr *v.* Bigler, 16 Abb. (N. Y.) Pr. 183; Davis *v.* Talcott, 12 N. Y. 188; Morgan *v.* Plumb, 9 Wend. 293; Colburn *v.* Woodworth, 31 Barb. 381; Green *v.* Clark, 5 Den. (N. Y.) 505; Bank of Missouri *v.* Benoist *et al.*, 10 Mo. 524; Felton *v.* Dickinson, 10 Mass. 290; Arnold *v.* Lyman, 17 Mass. 404; Meyer *v.* Lowell, 44 Mo. 330; Flanigan *v.* Hutchinson, 47 Mo. 239; Rev. Stat. 1845, p. 927, sec. 1; Session Acts 1865, p. 112, secs. 1, 2, p. 954, sec. 4; Session Acts 1867, p. 157, sec. 3; State *v.* Clerk of Jefferson County, 41 Mo. 588; City of St. Joseph *v.* Hannibal & St. Jo. R. R. Co., 39 Mo. 477; State

*v.* Dalle, 48 Mo. 282 ; Egyptian Lever Co. *v.* Hardin, 27 Mo. 497 ; Northern Liberties *v.* St. John's Church, 1 How. 10 ; St. Louis Building and Savings Assn. *v.* Lightner, 42 Mo. 425 ; Wag. Stat. 1159 ; City of Carondelet *v.* Picot, 38 Mo. 130 ; Taylor's L. & T. (6th ed.), sec. 398 ; Mayor and Council *v.* Cashman, 10 Johns. 96, 97 ; Oswald *v.* Gilbert, 11 Johns. 443 ; Wilkinson *v.* Libbey, 1 Allen (Mass.), 375 ; Port *v.* Kearney, 2 N. Y. 396 ; Shepardson *v.* Elmore, 19 Wis. 428 ; Bleeker *v.* Ballou, 3 Wend. 263, 266 ; Astor *v.* Miller, 2 Paige (N. Y.) Ch. 68, 70, 74 ; Palmer *v.* Warren Ins. Co., 1 Story, 364 ; Webb *v.* Perpetual Ins. Co., 14 Mo. 3.

Gantt, P. J., delivered the opinion of the court.

This action was brought on a lease dated June 7, 1849, executed by Vallé to Michael, and by him assigned to defendant. It created a term, commencing on June 7, 1849, and ending June 6, 1869, and, among the covenants, was the following on the part of the lessee, viz. : To pay the yearly rent of $800 in quarterly payments, " and all taxes whatsoever to be levied during the term of this lease, including the taxes for the year 1849." The petition alleged that this covenant was broken, in that the taxes for the city, State, and county for the year 1869 were $586.24, and that defendant had refused to pay this sum. That plaintiff paid it, and he asks judgment for the amount and interest.

The defendant denied all the allegations of the petition, except the making of the lease, and its assignment, and set up a counter-claim. Plaintiff filed a reply.

The cause was tried at great length, and many questions are presented by the record which we do not consider essential to the determination of the controversy, under the view we take of the covenant declared on. The meaning of the words employed, omitting " including the taxes for the year 1849," was that lessee should pay all taxes

levied during "the term of this lease." What was that term? Twenty years, beginning in 1849 and ending in 1869. When would the first payment become due, under this covenant, as to taxes?

It was assumed at the argument that the covenant was to pay "all taxes whatsoever to be ASSESSED during the term." We have seen, by an examination of the record, that "it was to pay" all taxes * * * LEVIED during the term." There is a wide difference between the two things. To assess a tax is to declare a tax to be payable; to levy it is to raise or collect it. Bouv. L. Dic. title Levy. One of the first things done by the Parliament of England, after the revolution of 1688, was to pass an act declaring that, "*to levy money* for or to the use of the crown by pretense of prerogative, without grant of Parliament, is illegal." 1 Bla. Com. 140. When an execution is issued for money, and comes into the hands of an officer, the *levy* of it—the *satisfaction* of it—is made by *seizing* the property of the defendant. Wag. Stat., sec. 19, p. 606. To be sure, the conversion of the thing seized into money is made before the execution is, in common parlance, said to be satisfied. But a levy is *prima facie* a satisfaction.

We think it is plain that there is a wide difference between taxes assessed and taxes levied, and no tax can be levied until the assessor's return is made and acted on by the County Court, and the books placed in the hands of the collector. This could not have been done, in the year 1849, before July, at any rate, as may be seen by the citations made in *Blossom* v. *Vancourt*, 34 Mo. 390. Hence, the State and county tax for the year 1849 could not have been *levied* until after the commencement of the term created by the lease in this cause.

This disposes of the matter, even if there had been no addition of the words, "including the taxes for the year 1849." This was only saying that the lessee should by all means, and without doubt, pay the taxes for 1849, as part of those for which he stipulated.

No taxes were leviable for State, city, or county purposes, in 1869, before June 6th, and none were actually levied. It is admitted that the taxes for 1849, 1850, 1851, 1852, 1853, 1854, 1855, 1856, 1857, 1858, 1859, 1860, 1861, 1862, 1863, 1864, 1865, 1866, 1867, and 1868 were all paid—that is, they were paid for twenty years, including 1849. That is all which was demandable of the lessee under the lease before us. It follows that plaintiff had no cause of action. The judgment of the Circuit Court is reversed, with costs, and final judgment is given for the defendant in this court. All the judges concur.

Gantt, P. J., delivered the opinion of the court on motion for a rehearing.

A motion for rehearing has been filed in this cause, and, as the question presented may be of interest to the bar, we give at some length our reasons for overruling the motion. The case is one in which our decision is final, which is another reason for the careful consideration of all that is urged on the motion for a rehearing. We gave the case full examination before delivering the opinion already filed, but, while our first aim in the decision of causes is to determine them according to law, our second wish is to make every suitor understand that everything he has urged has received a full, cautious, and patient consideration.

When the case was decided it seemed to the whole court that no difficulty was presented by the record, and that the error committed by the Circuit Court was manifest. All that we aimed at in our opinion was the clear enunciation of the views on which we reversed the judgment. As this court is of only limited ultimate jurisdiction, our general rule is to make our opinions as brief as is consistent with the avoidance of obscurity. From the earnestness with which the counsel for respondent press their motion for a rehearing, we are induced to think that we may in this instance have carried this rule too far, and this impression is strengthened by the observation that the point which

struck the whole court on the statement of the case, and which is, in our opinion, decisive of the controversy, seems to have escaped the attention of both the counsel and the court below, although it is apparent, as we think, on the face of the record. It is, therefore, our intention to give some expansion and elucidation of the views we entertain. It is not our purpose to invite litigants, as a general thing, to reargue their cases on motion for a rehearing. One decisive objection to such a practice is that it would inevitably lead to a slovenly style of arguing them in the first instance, and the delay consequent on it would be intolerable. Nor do we propose, in general, to state our reasons for overruling such a motion. But we invite the bar to scrutinize all our opinions, and if they point out an error in them we shall feel that a service has been done to ourselves, while their client's interests have been promoted by this performance of their duty.

We have bestowed great, and, as we must think, disproportioned, attention on all that is urged by the counsel for the respondent, and remain convinced that the judgment of the court and the opinion as originally delivered should not be varied or qualified. What follows is a statement of our reasons for this conclusion.

The question being as to the liability of a party who, on June 6, 1849, covenanted to pay all taxes whatsoever to be levied on certain demised premises during the term of this lease (the term commenced June 6, 1849, and continued for twenty years thereafter), including taxes for the year 1849, the respondent, in his motion for a rehearing, argues two propositions. First, that "levied" is synonymous with, and equivalent to, "assessed" in this covenant. Second, that by this covenant the lessee covenanted to pay, not only all taxes *assessed* (not levied) during the term of twenty years created by the lease, including *the taxes for* the year 1849, but also the taxes assessed during the term, and payable after its close during the year 1869; so that

the lessee should, first and last, pay taxes for a term, not of twenty years, but of twenty-one years. The argument in support of these propositions consists, of course, in maintaining that "levy" means "assess," and that "including" means "in addition to."

On the first point they cite expressions from some of the statutes of the State which they think countenance the idea that the terms "levy" and "assess" are convertible.

They omit all reference to the revenue act of 1845, which was in force when this covenant was made, and it may be that the provisions of this statute, which are unusually explicit in marking the different senses in which the General Assembly used these different words, escaped the observation of the counsel for the respondent. We propose to cite them in elucidation of our views.

The counsel for respondent also detach from their context certain sentences occurring in the course of opinions delivered from time to time by the Supreme Court of Missouri, and argue that it thus appears that the court of last resort considered "levy" and "assess" to be convertible terms. What the respondent's counsel say on this head, indeed, goes further. They not only impute to the Supreme Court the use of the word "assess" in the sense of "levy," and of "levy" in the sense of "assess," but seem to deny that these terms have, in any case cited by them, been used by the Supreme Court of Missouri in the senses which this court thinks appropriate to them. We will not dwell upon this branch of the argument for the rehearing. Nothing but a reference to the passages cited is, in our judgment, needed to completely vindicate the Supreme Court from the imputation we have mentioned. It is not contended that, in any case decided by that court, the question was made of the distinction between the meaning of these two terms. We content ourselves with saying that it appears to us that in the use of these words the Supreme Court was fully aware of, and assented to, the definitions of them which

are to be found in the authorities we proceed to cite, and that it used the words in question in the same sense which, for more than 300 years, they have borne in England and America.

We quote from Jacob's, Tomlin's, Burrill's, and Bouvier's law dictionaries, and from the unabridged editions of Webster's and Johnson's dictionaries of the English language. The first are, of course, the most authoritative; but we might rely on the last alone, so little do they differ from the first in ascertaining the meaning of these terms of art. We then quote the statutes of 1845, and the latest act on the subject of revenue to be found in our General Statutes.

Jacob's Law Dictionary defined *assessors,* or *assisors,* or *assessores,* by a Latin sentence, which he leaves untranslated: "*Sunt qui assisas condunt, aut taxationes imponunt.*" The Latinity is barbarous enough, but the meaning is perfectly plain: "Assessors are those who make assessments or impose taxes."

Burrill's Law Dictionary, title "Assess": "To rate or tax; to fix or settle a sum to be *levied* or paid."

Bouvier's Law Dictionary: "Assessment is the making out a list of property, and fixing its valuation or appraisement; it is also applied to making out a list of persons and appraising their several occupations, chiefly with a view of taxing the said persons and their property."

Jacob's Law Dictionary, title "Levy." He says: "The term is used in the law for 'to collect,' or 'exact,' as to levy money, etc. Sometimes it signifies to exact or cast up, as to levy a ditch," etc.

Id. "Levying money without consent of Parliament. No subject of England can be constrained to pay any aids or taxes for the defense of the realm or the support of the government but such as are imposed by his consent or that of his representatives in Parliament," etc.

Id. *"Levari facias."* "A writ of execution directed to the sheriff for *levying a sum of money* upon a man's lands and tenements, goods and chattels," etc.

Tomlin's Law Dictionary, title "Levy." He seems to have followed Jacob almost literally. (9 *v.*)

Burrill's Law Dictionary, title "Levy." "To collect by execution. Executions are usually indorsed with a direction to the sheriff to *levy* so much money," etc.

Burrill (*loco citato*) derives the word, as of course every one else does, from the Latin *levo*, or the French *lever*, both signifying to *raise*. He adds: "In old English law 'to raise or lift up.' * * * To *levy a tax* had the same radical sense ' of raising.' "

Bouvier's Law Dictionary, title "Levy:" "A seizure; the raising of money for which an execution has been issued." The author then goes on to show what acts are necessary to constitute a valid *levy*, in order to which "the sheriff must have the property within his power and control, or, at least, within his view." It may be remarked that our statute, from 1845 to the present time, requires the same formalities, and perhaps is still more strict. Its words are (1 Wag. Stat. 1872, p. 606, sec. 18 ; Rev. Code of 1845, p. 489, sec. 67): "The word levy, as used in this act, shall be construed to mean the actual seizure of property by the officer charged with the execution of the writ." Every lawyer knows that the object of this statute was to prevent the fraudulent or constructive *levy* from working hardship to an innocent purchaser.

We come now to Webster's and Johnson's dictionaries.

Webster : "Assess. 1. To set, fix, or charge a certain sum upon, as a tax ; as, 'to assess each citizen in due proportion.' 2. To value ; to fix the value or profits of, for the purpose of taxation."

"Levy. 1. To raise or give up, as a siege. [*Obs.*] 2. To raise or collect ; said of troops, etc. 3. To raise or

collect by assessment; as to levy taxes, toll, tribute, or contributions. 4. (*Law.*) To gather or exact; as to levy money," etc.

Johnson's (Quarto) Dictionary: "Assess. To charge with any certain sum."

Id. "Levy. (*Lever*, French.) To raise; to bring together, applied to men. 2. To raise, applied to money," etc.

Our statute of 1845 on the subject of the revenue is divided into six Articles. The 1st declares what property shall be taxed and what shall be exempted from taxation. The title of the 2d Article is: " Of the assessment of property for taxation." This title tells the whole story. It would suffice, we think, without another word, but we go on. The 3d is entitled: " Of the collection of the revenue, and miscellaneous provisions." Reading this chapter, we come to section 23, the marginal summary of which is : " Power of collector to *levy* on and sell personal property." The section itself declares * * * "they [the collectors] shall have power to seize and sell the goods and chattels of the person liable for the tax," etc.; and section 25 says, " whenever taxes shall be *levied* by the sale of goods, in addition to the amount of the tax, the collector shall *levy* the necessary costs of the proceeding, and 10 per centum on the amount of the tax, for his trouble." Section 119, page 1183, of Wagner's Statutes of 1872, on the subject of *revenue*, uses the word *levy* in the same sense. We do not quote it at length.

Now, we cannot understand how any person, even if previously ignorant of the meaning of the terms " assess " and " levy," can read the Missouri statute, chapter 147 of the Digest of 1845, from page 926 to 946, inclusive of both, and remain under any doubt or misapprehension of the sense in which the law-makers of that day used the words. We have assumed that the inquirer is not a lawyer, and that he wished to know what was the import of these terms as used in the statutes of Missouri in 1849. He would naturally

look to the digest last made of our laws which was in force in 1849, and, turning to the head "Revenue," he would read the chapter, part of which we have cited. If not yet quite satisfied, and desirous of knowing whether the Legislature of Missouri used words in the same or a different sense from that which had been, from time immemorial, consecrated by the Parliament and courts of England, if he should consult the records in which their usages are preserved, he would discover that the law-makers and the legal profession in Missouri were in complete accord with the corresponding bodies in the mother country. If, then, he should examine whether the vernacular agreed with the scientific sense of the words, he would find, by consulting Webster and Johnson, that the agreement was perfect. If, at the end of all this, he was told by courts of justice that all this diligence was to no purpose; that the legal meaning of a term was not only a matter inscrutable by all who had not access to the mysterious volumes which compose a lawyer's library, but that the English language in these volumes was itself a means of misleading the unwary and uninitiated reader; that its meaning was liable to be wrested from its scientific as well as its common signification, in a manner which did equal violence to the principles of exegesis and the common sense of mankind, we would certainly expect him to form and express an opinion in no wise favorable to the law as a science, or to the exposition of it by those who are intrusted with its administration.

We feel that we have dwelt on this subject at unnecessary length, but we believe that we have made it plain that the respondent (plaintiff below) has no right of action against the appellant. We have seen that the tax for the year 1849 was *levied* (that is, raised, or collected) after June 6th, which was the date of the covenant before us; that the tax for the year 1869 was not levied, and was not leviable, until *after June 6*, 1869; that the taxes for the whole term of twenty years, beginning with 1849, have been paid; and

that the tax now in dispute is the tax of 1869, which was levied after June 6, 1869, and was not by law leviable until after that day—*i. e.*, until after the end of the term. Obviously nothing remains to be decided. Whatever we may think of the second proposition of the respondent is immaterial. If we said anything on that subject, our observations, being unnecessary to the determination of the controversy, would be *obiter dicta*. All courts should shun the utterance of these, and particularly courts which are not of last resort. The motion for a rehearing is overruled, all the judges concurring.