[No. 3807.]

## THE PEOPLE OF THE STATE OF COLORADO v. AMES ET AL.

1. STATUTORY CONSTRUCTION.

It is not to be presumed that the legislature ever requires the performance of a useless formality.

2. TAXATION—MILITARY POLL TAX—ASSESSOR'S DUTIES.

It is the duty of the assessor to extend the military poll tax with the other taxes upon the assessment roll.

3. STATUTORY CONSTRUCTION.

The construction given to a statute immediately after its enactment by those charged with the duty of carrying its provisions into effect, and enforced for many years without question, should not be set aside but for the most weighty reasons.

4. CONSTITUTIONAL LAW—POLL TAX.

The limitation contained in sec. 11, art. 10 of the constitution is as to the rate of taxation on property for state purposes only, and does not abridge the power of the legislature to provide for the levy of a military poll tax.

5. SAME.

The fact that the governor has dispensed with the military enrollment does not operate to suspend the military poll tax, or the duty of levying and collecting the same.

6. CONSTITUTIONAL QUESTIONS.

Ordinarily ministerial officers should enforce a statute according to its plain requirements, leaving the question of its constitutionality to be determined by the courts.

7. SAME.

The different constitutional and statutory provisions touching the military poll tax are considered and construed in the opinion.

*Error to the District Court of Arapahoe County.*

THIS action was instituted by the attorney general on behalf of the people of the state, to obtain a writ of mandamus to compel the assessor to extend the military poll tax for the year 1896, upon the assessment roll of Araphoe county, and also against the treasurer, to compel him to collect this tax. An alternative writ of mandamus was issued, to which separate answers were filed by Willard L. Ames, the county assessor, and Frank Hall, the county treasurer. To these

answers a demurrer was filed, and overruled.    The attorney
general electing to stand by the demurrer, the proceeding
was dismissed, and the case brought into this court upon
error.

The case may be fully considered upon the answer of the
respondent Ames.    In this answer he admits the several alle-
gations of the alternative writ, and alleges in defense, the
following:

1. That it is not his duty to extend the military poll tax
upon the assessment roll.

2. That the tax is in excess of the constitutional limita-
tion of four mills on the dollar of valuation, and therefore,
unconstitutional.

3. An order by the governor, dispensing with the military
enrollment for the year 1896.

4. The failure of the county commissioners of Arapahoe
county to prepare a list for the assessor of persons subject
to this military poll tax.

5. That there is no provision of law whatever for assessing
and collecting the military poll tax.

The following constitutional and statutory provisions are
referred to in the opinion:

" There shall be elected in each county, on the first Tues-
day in October, in the year eighteen hundred and seventy-
seven, and every alternate year forever thereafter, * * *
one county assessor."    Constitution, sec. 8, art. XIV.

" A poll tax shall be assessed on every able-bodied male
inhabitant of the state, over the age of twenty-one and under
fifty years, whether a citizen of the United States or an
alien."    2 Mills' Ann. Stats. sec. 3764.

" The county commissioners of each county shall, at the
time of levying the tax for county purposes, *cause to be lev-
ied an annual poll-tax of one dollar upon each male inhabitant*
over the age of twenty-one years, excepting active members
of the national guard and such other persons as may be
exempt by law.    A failure or neglect on the part of the
county commissioners to levy such tax shall subject such

county commissioners, and each one of said such commissioners to a fine of not less than one thousand nor more than five thousand dollars, for the benefit of the military fund; and it is hereby made the duty of the adjutant general to institute proceedings against such commissioners to recover such fine. The said poll-tax shall be assessed and collected in the same manner as is now or may be by law provided for the assessment and collection of other state poll-taxes." 2 Mills' Ann. Stats. sec. 3082.

"The money collected from the above poll-tax shall be kept by the county treasurers separate from all other funds, and shall be by them transmitted quarterly to the state treasurer, who shall place it to the credit of the military fund." 2 Mills' Ann. Stats. sec. 3083.

"Every county treasurer who shall refuse or neglect to send to the state treasurer any and all moneys belonging to the military fund, as provided for, shall be deemed guilty of a high misdemeanor, and, upon conviction thereof, shall be fined in a sum not less than fifty dollars nor more than five hundred dollars, and the court may adjudge that said treasurer be removed from his office. 2 Mills' Ann. Stats. sec. 3085.

"Any person subject to military poll-tax, and refusing or neglecting to pay the same, on or before the first day of March in each and every year, shall be considered delinquent, and the county treasurer shall, within ten days thereafter, report to the county attorney of his county a list of such delinquents in his county. Every such delinquent shall be subject to a penalty of twenty-five dollars, which penalty, together with the military poll-tax added, shall be recoverable in a civil action, in the name of the people of the state of Colorado, in any court of competent jurisdiction, and it shall be the duty of such county attorney to institute and prosecute such suit to final determination, immediately upon such report being made to him by (the) county treasurer. * * *" 2 Mills' Ann. Stats. sec. 3087.

"It shall be the duty of every person owning or having

charge of property in this state, subject to taxation, to make and deliver to the assessor on or before the twentieth (20) day of June in each year, a correct list of the same, as required by law, whether he shall receive from the assessor a notice to do so or not, and every assessment made against property subject to taxation shall be valid in all respects, whether such notice was received or not. And no failure of the owner to have such property assessed or to have the errors in the assessment corrected, and no irregularity or error or omissions in the assessment of any property, or in the levying of any tax, shall affect in any manner the legality of any taxes levied thereon, nor affect any right or title to such real property which would have accrued to any party claiming or holding the same under or by virtue of a deed executed by the treasurer, as provided by law, had the assessment of such property been in all respects regular." 3 Mills' Ann. Stats. sec. 3790.

" The said list shall contain * * * *the number of polls.*" 3 Mills' Ann. Stats. sec. 3792.

" The rate of taxation on property, for state purposes, shall never exceed four mills on each dollar of valuation." Constitution, sec. 11, art. X; 3 Mills' Ann. Stats. sec. 446.

" The assessor of each county is directed, between the first (1) day of April and the twentieth (20) day of June, of each year, to leave with each person resident in his county, of full age and sound mind, at the usual place of residence, or at the office or other place of business of such person, a written or printed notice, requiring him to make out and return to the assessor, at a time and place therein specified, a statement or list of his property, which by law is subject to taxation; and to leave a blank form upon which said list may be made; but if the person is prepared to render his list at the time the notice is left, it shall be the duty of the assessor to receive it at that time." 3 Mills' Ann. Stats. sec. 3813.

" On the first day of the meeting of the county commissioners of each county as a board of equalization, the county

assessor shall submit to said board *the complete assessment of his county*, together with the list of property returned to him. He shall also submit to said board, lists of all persons or corporations in his county who have returned insufficient lists of personal property, or have failed to return any list of property, as required by law, and shall report his action in each case." 3 Mills' Ann. Stats. sec. 3816.

" On or before the first (1) day of January, annually, every county assessor shall deliver to the *county treasurer the assessment book or roll*, with the taxes extended, containing in tabular form, and alphabetical order, the names of the persons and bodies in whose names property has been listed in his county, with the several species of property and the value, as required by section nine (9) of this act, with the columns of numbers and value footed; and in a column to be provided for that purpose, he shall write the words 'by the assessor,' when the list was made by himself; and all real estate not returned to the assessor shall be entered and described at the end of said assessment book or roll, with the taxes extended, under the head of ' Unknown,' as provided by law." 3 Mills' Ann. Stats. sec. 3819.

ATTORNEY GENERAL BYRON L. CARR and ASSISTANT ATTORNEY GENERAL CALVIN E. REED, for plaintiff in error.

Mr. G. Q. RICHMOND, Mr. S. D. C. HAYS of counsel, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

We will consider the objections urged in the order in which they are presented. It is true that there is no direct statutory provision, requiring the assessor to extend the military poll tax upon the assessment roll; but the law does require the commissioners to cause to be levied " an annual poll tax of one dollar upon each male inhabitant over the age of twenty-one years, except members of the national guard

and such other persons as may be exempt by law;" and it provides a penalty for failure on the part of the commissioners to levy such tax.  The constitution provides that there shall be elected, biennially, in each county, one county assessor, and in the absence of any constitutional or statutory provision as to the duties of such assessor, his duties will be ·held to be such as are usually incumbent upon such an officer. The statute requires the assessor to leave with all owners of property residing in his county, a tax schedule, upon which the number of the polls, among other things, is to be entered. When this schedule is completed, it is to be returned to the assessor, and it is made his duty to deliver to the county treasurer the assessment book or roll, with the taxes extended. The statute requires the number of polls to be included in the schedules returned to the assessor, and it would be doing violence to the intelligence of the legislature to hold that this is a mere useless formality, and that the assessor has no duty to perform in the premises.  Why require the number of polls to be returned to such officer, except for the purpose of having the same extended in order that the poll tax may be collected as other taxes are collected?  We think it is clearly his duty to extend the military poll tax with the other taxes upon this assessment list.  This is in accordance with the uniform practice that has prevailed in this state for many years.  Poll taxes have been levied and assessed from the earliest formation of the territorial government, without question; and while it is true that this does not make such levy and assessment right, a precedent so long followed is entitled to great weight.

The levy of this tax is not in violation of section 11 of article X of the state constitution, as this section only fixes a limitation upon the rate of taxation for state purposes on property, and a poll tax is not a tax upon property.  It is a capitation tax; that is, a specific sum levied upon each person.  It is a fundamental principle, that the taxing power of the state is unlimited, except as the same is restricted by the constitution, and there is no constitutional limitation

with reference to a capitation tax.   In the case of *R. R. Co. v. Peniston*, 18 Wall. 5, Mr. Justice Strong says:

"No one ever doubted that before the adoption of the Constitution of the United States each of the states possessed unlimited power to tax, either directly or indirectly, all persons and property within their jurisdiction, alike by taxes on polls, or duties on internal production, manufac ture, or use, except so far as such taxation was inconsistent with certain treaties which had been made. * * * The extent to which it shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the legislatures to which the states commit the exercise of the power."

In the return to the alternative writ, it is shown that the respondent Ames, on the 3d day of June, 1896, received from the governor an order, dispensing with the military enrollment for 1896, and that in March, 1897, he received from the same source a like order, dispensing with the military enrollment for 1897; and the respondent says, that in obedience to such order he has refrained from preparing the list of persons liable to enrollment in his county.   As this is a proceeding to compel the extension of the military poll tax for the year 1896, the order relating to 1897 will not be considered.   An examination of the statutes discloses that the military enrollment and the assessment of a military poll tax are two separate and distinct things.   The military enrollment is made for the purpose of ascertaining the number, names, etc., of all persons subject to military duty. The governor is given the power to dispense with this enrollment whenever he sees fit, or he may order such enrollment at any time whenever, in his opinion, there is a necessity therefor.   Such enrollment has nothing to do with the levy of the military poll tax.

It is contended that it is the duty of the commissioners to furnish the assessor with a list of the male inhabitants of the state subject to the payment of this tax, and that no

duty devolves upon the assessor until such list is furnished. The statute—2 Mills' Ann. Stats. sec. 3082—provides that the commissioners shall cause to be levied an annual poll tax. There is nothing in the statute which requires the commissioners to designate by name the persons subject to such tax; this is properly left with the assessor, with his better facilities for ascertaining the facts requisite for such action.

There are several other statutes of the state, whereby it is made the duty of the county commissioners to cause to be levied certain other taxes, etc. We think such statutes are complied with by the passage of a resolution, as in this case, providing for the levy of such taxes, the mere clerical work of extending the tax devolving upon the county assessor. This has been the uniform practice in the past, and we see no reason to depart from it at this time.

Sec. 3082, Mills' Ann. Stats., provides that the military poll tax "shall be assessed and collected in the same manner as is now or may be by law provided for the assessment and collection of other state poll taxes." It is contended that there is no provision for either the assessment or collection of other state poll taxes; and hence, it is argued, that the military poll tax can neither be extended by the assessor or collected by the treasurer. Literally speaking, at the time of the passage of the act there was no other state poll tax, but we must ascertain the intent of the legislature at the time the original act was adopted, of which the above section is a part. This was under the territorial government, and the word "territory" was originally used instead of the word "state," so that the statute read "as other territorial taxes," and the word "state" was subsequently substituted for territory, in compliance with the general law, passed upon the organization of the state, for the purpose of making the statutes conform to the changed conditions incident to a state government. See General Laws, 1877, p. 9, sec. 1.

Under the territorial government poll taxes in various amounts were from time to time levied by the several boards of county commissioners in their respective counties. It is

shown by the brief of the attorney general that these taxes were extended by the county assessors; and collected by the county treasurers. Such practice having been followed for thirty years or more, it should not now be set aside for any but the weightiest reasons.

An examination of the statute shows that it is made the duty of the county commissioners to levy this military poll tax in their respective counties, and the statutes provide severe penalties for their failure or neglect so to do. It is also provided that the county treasurer shall keep the money collected from the military poll tax separate from other funds, and at stated intervals, transmit the same to the state treasurer. Mills' Ann. Stats. sec. 3083.

. It is provided that every county treasurer who shall neglect to send this money to the state treasurer, shall be guilty of a high misdemeanor, and severely punished. Mills' Ann. Stats. sec. 3085.

By another section a penalty is imposed for failure or refusal to pay these taxes; and by still another it is made the duty of all residents of the county to return to the assessor a list of property, *together with the number of polls.* An examination of these sections shows conclusively, that it was the intention of the legislature that this tax should be levied and collected the same as other taxes, and the assessor should, consequently, have extended the same upon his lists, and the treasurer, upon being furnished with the proper data, should proceed to collect such a tax, as other taxes are collected.

That the general revenue laws of the state may be invoked for the collection of this tax, is apparent from the very title of the act, which is, "An act concerning the enrollment and organization of the militia of the state; prescribing the districts, number and rank of the officers thereof, and defining the duties of such officers; *to provide for the more efficient collection of the military poll-tax,* and to repeal," etc.

Aside from what has already been said, we think it would be dangerous to government to allow purely ministerial offi-

cers, such as respondents, to question the constitutionality
of these various acts, or to refuse to extend any tax when
required so to do.    If the county assessor of Arapahoe county
may refuse to extend the military poll tax, the county assessor
of Pueblo county may refuse to extend the tax for the state
university, while the county assessor of some other county
may refuse to extend the tax for the state school of mines,
or for general purposes.    To permit this would result in
seriously crippling the state government, and compel state
institutions which derive their support from the state, to
close their doors at the will or caprice of county assessors or
county treasurers.    It is always better for ministerial officers
to obey the law, particularly where a violation of its provi-
sions may lead to such disastrous consequences.    This has
special force where a statute has been for a long time ac-
quiesced in, and the procedure thereunder has become fixed,
as in this instance.    *People ex rel., etc., v. Salomon*, 54 Ill. 40.

For the reasons given, the demurrer to the answer of as-
sessor Ames should have been sustained, and the peremptory
writ of mandamus ordered.    As a matter of precaution, the
treasurer has been made a party to this action, as it is alleged
that it is his duty to collect this tax.    In his answer, this
officer has expressed a willingness to collect the same when
furnished with the proper authority for that purpose, or with
a list of persons liable to the payment of the tax; but says
that he is without authority to collect the tax unless he finds
it extended upon the assessment roll.    As we have already
determined that it is the duty of the assessor to extend the
military poll tax, upon the assessment roll, it is unnecessary
further to consider the answer of the treasurer.    We may
say, however, in conclusion, that this tax having been levied,
in pursuance of law, it was the duty of the proper officer to
collect the same, and had we reached a different conclusion,
with reference to the duties of the assessor, we should, never-
theless, hold that it was the duty of the treasurer to collect
the tax.    *The Iowa Ry. Land Co. v. Sac County*, 39 Iowa, 124;

*The Iowa Ry. Land Co. v. Carroll County,* 39 Iowa, 151; *Parker v. Sexton & Son,* 29 Iowa, 421.

The judgment of the district court will be reversed, with directions to enter the peremptory writ of mandamus.

*Reversed.*