[No. 4722.]

## PARSONS v. THE PEOPLE.

1.   Intoxicating Liquors — State Licenses — Revenue — Statutory
     Construction—Proclamation of Governor.

Sections 18 and 19 of the revenue act passed at the special session of the legislature, 1902, requiring all persons engaged in the sale of liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such state license, come within and are authorized by the proclamation of the governor convening the legislature, "To provide the necessary revenue to pay the expenses of the state government and of state institutions for the fiscal years ending November 30, 1901, and 1902, and to enact a revenue law for the state providing for the assessment of property for taxation and the levy and collection of taxes."

2.   Same—Druggist.

Druggists doing business in cities and towns and who have permits from the city councils or boards of trustees to sell liquors for medicinal, mechanical, sacramental and chemical purposes only, are subject to the provisions of sections 18 and 19 of the revenue act of 1902, requiring all persons engaged in the sale of liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such state license.

3.   Same.

Sections 18 and 19 of the revenue act of 1902, requiring all persons engaged in the sale of liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such license, were enacted solely for the purpose of securing revenue for state purposes, and not for the purpose of regulating the liquor traffic.

4.   Taxes and Taxation—Constitutional Limitation—Occupation
     Tax—Intoxicating Liquors.

The constitutional provision limiting the rate of taxation for state purposes to four mills on each dollar of valuation, applies only to taxes levied upon property, and does not prohibit the levying of occupation or privilege taxes, and sections 18 and 19 of the revenue act of 1902, requiring all persons engaged in the sale of liquor to pay an annual license fee and secure a license from the state treasurer, and providing a penalty for selling liquors without such license, are not in violation of the provisions of the constitution in that respect.

5. **Constitutional Law — Title of Act — Revenue — Intoxicating Liquors.**

Sections 18 and 19 of the revenue act of 1902, requiring all persons dealing in liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such license, are within the subject expressed in the title of the act, which is "An act in relation to public revenue."

6. **Taxes and Taxation—Uniformity—Constitutional Law—Intoxicating Liquors.**

Sections 18 and 19 of the revenue act of 1902, requiring all persons dealing in liquors to pay to the state an annual license fee, are not in violation of the provisions of section 3, article X, of the constitution, requiring all taxes to be uniform upon the same class of subjects.

7. **Intoxicating Liquors — Cities and Towns — License — State Revenue.**

The statute delegating to municipalities exclusive authority to license, regulate and prohibit the sale of intoxicating liquors therein, does not exempt persons holding licenses or permits from such municipal authorities to sell liquors, from the payment of the state license fee, as required by section 18 of the revenue act of 1902.

8. **Same—City and County of Denver.**

The provision of the charter of the city of Denver giving the city council exclusive power to license, regulate and tax all lawful occupations, trades and professions, and the selling and giving away of intoxicating liquors, does not exempt liquor dealers within said city from the provisions of sections 18 and 19 of the revenue act of 1902, requiring all persons dealing in liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such license. Neither is said revenue act of 1902 in violation of any provision of article XX of the constitution creating the city and county of Denver.

9. **Taxes and Taxation—Intoxicating Liquors—Constitutional Law.**

Sections 18 and 19 of the revenue act of 1902, requiring all persons dealing in intoxicating liquors to pay to the state an annual license fee and to procure from the state treasurer a license, and providing a penalty for selling liquors without such license, is not in violation of any provision of the federal or state constitution guaranteeing to citizens the equal protection

of the laws, or prohibiting the enactment and enforcement of laws which deny to any citizen due process of law.

*Error to the County Court of La Plata County.*

The constitutionality and, as to druggists, the applicability, of sections 18 and 19 of our general revenue law (Session Laws 1902, pages 47, 48), have been called in question by the state druggists' association, of which defendant is a member, and by others embraced within its provisions, who have refused to pay the license fee therein prescribed. The attorney general and opposing counsel concur in the statement that the defendant, who is a reputable business man, not intending to violate any valid law of the state, but for the purpose of setting at rest the controversy over these sections, at the instance of those directly concerned, made the sales which gave rise to this prosecution. While, therefore, this is a real, and not a feigned, action, the defendant's conduct which gave rise to it is not to be censured as a wilful violation of a public law which he knew to be valid, but should be considered as a *bona fide* attempt, by one who believes the law to be void, to bring to an issue, in which counsel for both sides have co-operated, the controversy which the state and those affected by the act, if valid, wish to have settled.

The salient facts are not in dispute. The defendant is a druggist doing business in the city of Durango, which is a municipal corporation organized under the general statutes. From the United States government he holds a license to sell liquors, and a permit from the city council of the city of Durango for the sale of liquor for medicinal, mechanical, sacramental and chemical purposes only, and under such authority, but without having a license issued to him by the state treasurer therefor, he sold within the city of Durango a half pint of liquor for

medicinal purposes, and, at the time this action was brought, was selling liquor generally in that city, but only for the purposes specified in the permit.

Section 18 reads:

"Every person, company or corporation selling any malt, vinous or spirituous liquors shall, in addition to other license fee exacted by law, or by the ordinances of any municipality, pay to the state of Colorado an annual license fee of twenty-five dollars per annum in advance, for each and every saloon, restaurant, hotel, club, drug store, liquor store or other place where any said liquors shall be sold. The license aforesaid shall be issued by the treasurer of state, to whom the license fee aforesaid shall be paid; the said license to specify the date of issuance, the period which it covers, the name of the licensee, the place licensed, and that such license is issued subject to the ordinances of the city or town and to the regulations of the county on the subject, in which the place so licensed is located. Said license shall be conspicuously exposed at all times in the place thereby licensed; and all constables, sheriffs and police officers shall see to it that every such person, company and corporation within his jurisdiction has procured such license. Neither the county authorities of any county, nor the officers of any municipality, shall issue, transfer or renew any license to sell any malt, vinous or spirituous liquors until such person, company or corporation shall in the first instance produce a state license, as provided herein, covering the whole period for which a license or a renewal or transfer thereof is asked from any county or municipality; *Provided,* That the said license may be transferable to successors in business."

Section 19 prescribes the penalty for a violation of the provisions of section 18, which is a fine of $100 for the first offense, and for a second offense a

forfeiture of any state or municipal license which the accused has theretofore held.

The constitutional and statutory provisions considered in the opinion are: Section 9 of article IV, sections 2, 3, 11 and 16 of article X, and section 4403, paragraph 18, 3 Mills' Ann. Stats. (Session Laws 1895, 221), the portions of which, so far as pertinent here, read:

## ARTICLE IV.

"Sec. 9.   The governor may, on extraordinary occasions, convene the general assembly, by proclamation, stating therein the purpose for which it is to assemble; but at such special session no business shall be transacted other than that specially named in the proclamation.   *    *    *  "

## ARTICLE X.

"Sec. 2.   The general assembly shall provide by law for an annual tax, sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year."

"Sec. 3.   All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal  *  *  *  "

"Sec. 11.   The rate of taxation on property, for state purposes,   *   *   *   whenever the taxable property within the state shall amount to one hundred million dollars,   *   *   *   shall not exceed four mills on each dollar of valuation.   *   *   *  "

"Sec. 16.   No appropriation shall be made nor any expenditure authorized by the general assembly whereby the expenditure of the state during any fiscal year shall exceed the total tax then provided for

by law and applicable for such appropriation or expenditure, unless the general assembly making such appropriation shall provide for levying a sufficient tax not exceeding the rates allowed in section eleven of this article to pay such appropriation or expenditure within such fiscal year.    *    *    *    *   ".'

The following is one of the grants to municipal corporations organized under the general municipal corporation act (3 Mills' Ann. Stats., § 4403):

"Eighteenth: To have the right, subject to the laws of the state, to license, regulate or prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor within the limits of the city or town, or within one mile beyond the outer boundaries thereof, except where the boundaries of two cities or towns adjoin; the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license; *Provided,* That the city council in cities, or board of trustees in towns, may grant permits to druggists for the sale of liquor for medicinal, mechanical, sacramental and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance; *Provided, further,* That in granting licenses, such corporate authorities shall comply with whatever general law of the state may be in force relative to the granting of licenses, saloons, and keeping open saloons, bar or tippling houses on Sunday, or the first day of the week."

The county court held the statute valid and applicable to druggists, found defendant guilty of a violation of the provisions of section 18, and imposed a fine of $100, the minimum amount fixed by section 19.

Mr. John T. Bottom, for plaintiff in error.

Mr. N. C. MILLER, attorney general, and Mr. H. J. HERSEY, for the people.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

That the objections of defendant to this legislation may be clearly apprehended, we reproduce them here as summarized by his counsel:  (1)  These particular sections are not within the governor's proclamation, under which was convened the special session of the general assembly at which the revenue act in question was passed; (2) they are not applicable to druggists doing business in towns and cities organized under the general laws of this state, because, by the provisions of subdivision 18 of section 4403, hereinabove quoted, druggists may be given permits by the city council to sell for the designated purposes, and one holding a permit, as defendant does, is not within the purview of section 18 of the act of 1902, as the latter relates only to licenses and not to permits, and the latter statute, general in its terms, does not repeal or qualify the former law in so far as it concerns permits to druggists;  (3) all licenses or taxation of trades, professions, business or occupation imposed to produce revenue for state purposes are inhibited by the provisions of our constitution, since only direct taxes upon property at the limited rate prescribed by section 11 of article X can be levied therefor, and appropriations and disbursements for all state purposes are limited to revenue thus raised; (4) the subject-matter of these sections is not within the title of the act; (5) if what section 18 calls a license fee is, in fact, a tax for revenue, it violates the uniformity and equality clause of section 3 of article X, and constitutes a levy on the property of druggists in excess of the limited rate of four mills, prescribed by section 11 of the same article; (6) as

the constitution empowers the general assembly to vest in the corporate authorities of counties, cities and towns the exclusive power to license the sale of liquors, and the general assembly has, with respect at least to the city of Denver, exercised this authority by a special act in the nature of a charter, and such exclusive power is now conferred by article XX of the constitution, such delegation of power, having once thus been made, cannot be recalled by the provisions of a general revenue law, nor is it competent for the general assembly to abrogate the grant of power to the city of Denver resulting from the adoption of the 20th article; (7) the general objection that the provisions of these sections violate the letter and spirit of section 25 of article II of our bill of rights, and that provision of the federal constitution which guarantees to every citizen the equal protection of the law.

1. The revenue act of which sections 18 and 19 are a part was passed at a special session of the thirteenth general assembly convened by proclamation of the governor. Section 9 of article IV authorizes this proceeding, but provides that at such special session no business shall be transacted other than that specially named in the proclamation. That portion of the proclamation which is pertinent here reads: "To provide the necessary revenue to pay the expenses of the state government and of state institutions for the fiscal years ending November 30, 1901 and 1902, and to enact a revenue law for the state providing for the assessment of property for taxation and the levy and collection of taxes."

It is the contention of defendant that section 18, requiring, as it does, a license fee from those engaged in selling liquor, is not a revenue measure at all, and therefore by no construction does it come within the call. If, however, it be held that the fee therein pre-

scribed is in reality imposed to secure revenue, then the argument is that it still does not come within the call because the governor, by his proclamation, has restricted the general assembly to the enactment of a revenue law providing simply for the assessment of property for taxation, viz., for an *ad valorem* or direct property tax, and to the levy and collection of taxes of that character. So that, as it is said, whether section 18 provides for regulating the liquor traffic and the incidental imposition of a license fee, or for a tax to secure state revenue, it is not within the governor's call.

The first contention is resolved against the defendant by our ruling, upon another branch of the case, that section 18 constitutes not a regulation of the liquor traffic, but a provision for a tax to secure state revenue. The other contention is equally untenable. As proof of a supposed intention of the governor that the general assembly should, at the special session, confine legislation solely to providing improved methods of assessing property and to measures for their collection, much stress is laid upon the meaning of "levy," which counsel says is employed in the governor's proclamation as synonymous with "collect." In our view, this discussion is largely irrelevant. It is true that defendant is upheld by the lexicographers and by some cases like *Rhoads v. Given,* 5 Houst. 183, 186, and *Valle v. Fargo,* 1 Mo. App. 344, which declare that in the revenue laws of those states the word "levy" is used synonymously with "collect," and not in the sense of "assess." But it is just as true that in our revenue laws the word "levy" is sometimes used in the sense of "raising" or "imposing," and not in the sense of "collecting," a tax by execution. In different places in these laws the boards of county commissioners are authorized to "levy" or lay taxes, while the word "collect" is used

to define the power of the county treasurers to gather in or receive money for taxes theretofore assessed by county assessors and levied by the boards. So that if the meaning of the word is of moment in this discussion, it refutes defendant's argument. For it is here used as synonymous with "raising" or "imposing" or fixing the rate of tax which the proper executive officer shall "collect."

Other provisions of the proclamation of the governor, however, show that the primary purpose of calling together the general assembly was to pass a comprehensive revenue law, and the special reason therefor was the imperative necessity to provide for more revenue to defray the ordinary expenses of the state government, for securing which previous legislation was deemed inadequate. The language above quoted should not be taken by itself, but should be construed in connection with the rest of the proclamation.

So, also, it is competent for us to consider the governor's message. It is a public document, and, by section 8 of article IV, the chief executive, at the commencement of each session of the general assembly, shall by message give to that body information of the condition of the state, and shall recommend such measures as he shall deem expedient. In his message, delivered to this special session, the governor used the following language: "However, the matter of the greatest and utmost importance for your attention is the enactment of a revenue law that will insure sufficient revenue for the necessary expenses of the state government and of the state institutions. This is primarily the object in calling you together." It is thus apparent that the governor thought that it was competent under his proclamation for the general assembly to enact a general revenue law, which might embody provisions for increasing the state revenue.

In line with this thought, the general assembly interpreted the proclamation as authorizing it to pass a general revenue act, which is again strengthened when the governor signed the act containing section 18, providing for an occupation tax.

But if it were necessary, we could properly disregard as mere surplusage or improper restraint the language of this call in so far as it might seem to limit the general assembly to some particular method, or to some particular subject of taxation in raising revenue for the state. When the governor by his proclamation declared, as he did, that one object of convening the general assembly was to enact a revenue law for the state, his power was exhausted in so far as concerns the right of the legislature to carry that object into effect. It was not competent for him to restrict the general assembly to some particular method of raising revenue, or as to the subjects of taxation, but having declared the general object for convening the general assembly, viz., to pass a revenue law, that body was at liberty to adopt such methods as it deemed best to effectuate that object, and to select for itself the subjects of taxation. A case quite in point is *In re Proclamation,* 19 Colo. 333, 336, 338. For additional authorities, see *Baldwin v. State,* 21 Tex. App. 591, 593; *State v. Shores,* 31 W. Va. 491; *Mitchell v. F. & C. Turnpike Co.,* 22 Tenn. 455, 456.

2. One argument in support of the second proposition is that the license to sell liquor generally, referred to in the first part of paragraph 18 of the act of 1895, is one thing, and the permit to druggists to sell for the limited purposes mentioned in the first proviso, is another and entirely distinct thing; and since section 18 of the revenue act purports to treat of licenses only, and not of permits, the later law does not modify or repeal the earlier statute, and

therefore druggists in towns and cities in this state, so far as state, as distinct from federal, regulation is concerned, are only required to secure permits. from the municipal authorities, and are not compelled to obtain the state license provided for in the revenue act.

If the determination of this particular point depended upon mere definition, the distinction sought to be drawn by the defendant would be untenable. The law dictionaries and lexicographers concur in saying that a license is a permit to do a certain thing, and it is clear that these words are used synonymously in the act of 1895. *Paton v. People,* 1 Colo. 77; *People v. Raims,* 20 Colo. 489, 493; 2 Cooley on Taxation (3d ed.) 1137, 1150. If, however, there be a distinction between ''license'' and ''permit,'' as used therein, still the permit referred to in the proviso is one method of regulating the sale of liquor by druggists, and since, by the very terms of that statute, the licensing, regulating and prohibiting of the sale of liquors are all subject to the laws of the state— and the act of 1902 is certainly a law of the state— druggists' who are permitted by the municipality to sell for the limited purpose are as much subject to the act of 1902 as are those who are licensed by the municipality to sell without restriction. Moreover, if in reality the so-called license fee is imposed by way of a tax for revenue only, and not for regulation of a business, then the scope of section 18 of the new revenue law of 1902 is not, in the least, affected by the act of 1895, which is purely a measure of regulation, and both may stand. And this brings us directly to that important branch of the case.

3. It is altogether clear that while in section 18 the thing exacted is called a license fee, it is imposed solely for the purpose of securing revenue for state purposes. There is no element of regulation about

it. The power of imposition springs from the sovereign power of taxation, and not from the police power of the state. Indeed, the state license contemplated therein. is specifically made subject to the ordinances of the city or town and the regulations of the county upon the subject. Clearly, therefore, every feature of regulation is absent. That the fee must be paid in advance is only a proper method of collecting the tax, and the fact that the state license may be transferred to a successor in business of the one to whom it is originally issued again demonstrates that the fee is levied as a tax, and not as a method of regulation.—*Board Co. Commrs. v. Dunn,* 21 Colo. 185; *Denver City R. R. Co. v. Denver,* 21 Colo. 350; 2 Cooley on Taxation (3d ed.) 1133; Cooley on Const. Lim. (5th ed.) 725.

Though a license fee is imposed, since it is not for regulation, but for state revenue, and the power exercised is that of taxation, it must be upheld, unless inhibited by the organic act, which claim, on behalf of defendant, constituting, as it does, the vital issue, we proceed now to examine in connection with the kindred point that a license fee for state purposes is equally obnoxious to the fundamental law.

The main contention of defendant, as we have just said, is that, whether this provision is a license for regulation or a tax for revenue, all licenses or taxation of trades, professions, business or occupations in this state, for the purpose of securing revenue for state purposes, are inhibited by the provisions of article X of the constitution. In several cases this court, in discussing the various sections of this article, has said that, in securing revenue for ordinary state purposes, the general assembly is limited under the present valuation to four mills upon each dollar thereof; and speaking of sections 3, 11 and 16, in *People ex rel. v. May,* 9 Colo. 80, on page 92, that it

appears therefrom that no state indebtedness was contemplated except such as might be incurred under the provisions of section 3. The court, however, previously observed in the same opinion that it did not care to construe these sections in any final manner in advance of cases presented under them, and in the absence of full argument respecting the effect of their provisions. It is apparent, however, from the decision in this case, as well as in *People ex rel. v. Scott,* 9 Colo. 422; *People v. Board of Equalization,* 20 Colo. 220, and other similar cases, that when the court observed that the general assembly, in attempting to provide revenue for state purposes, is confined to that derived from the levy at the rate of four mills on the dollar, and that the way to obtain adequate revenue therefor is to increase the assessed valuation, it was referring to revenue derived from the taxation of property, and not of other sources of revenue. If this were a property tax, the provisions referred to would govern. Section 2, however, expressly speaks of *other sources* of revenue to defray the expenses of the state government than that provided for by an annual tax on property. While section 16 limits appropriations and expenditures during any fiscal year to the total tax already provided by law applicable therefor, unless the general assembly making such appropriations shall provide for levying a sufficient tax, not exceeding the rate allowed in section 11, nevertheless this limitation as to the rate refers to the rate to be levied on property; and the annual tax provided by law, mentioned in section 16, is not limited to a tax on property. Such expression "annual tax" may, and does, include occupation taxes as well; and though, in providing for revenue to meet the annual appropriation, the rate of the levy on property shall not exceed that fixed in section 11, the general assembly may, nevertheless, as section 2

expressly recognizes, from other sources, such as an occupation tax, derive revenue with which, in connection with a property tax, the expenses of the state government shall be met.

It must be remembered that, except as inhibited by the constitution, the legislative department of government has the unlimited power of taxation, not only as to the subjects of taxation, but also as to the rate, and may tax its own citizens for the prosecution of any particular business. *Nathan v. Louisiana,* 8 Howard 73; *Stanley v. Little Pittsburg M. Co.,* 6 Colo. 415; *M'Culloch v. Maryland,* 4 Wheat. 316; *People ex rel. v. Wemple,* 138 N. Y. 1, 9. There is nothing in the revenue article or elsewhere in the constitution which expressly, or by necessary implication, restricts the law making body in its attempts to produce revenue for state purposes to taxation upon property, real and personal. The provisions in article X containing restrictions as to rate of taxation evidently refer exclusively to a property tax, but there is nothing therein which prevents the general assembly from selecting other subjects of taxation, and prescribing the amount of the tax that it may see fit to impose thereon. Indeed, this court has decided in *People v. Ames,* 24 Colo. 422, 427, that the general assembly might impose a poll tax as a means for obtaining revenue for state purposes. This decision necessarily is against the contention of defendant; for if, for all state purposes, the general assembly is limited to a property tax, a poll tax could not be resorted to, for it is not a tax on property, but on persons. If the general assembly has power to raise revenue to aid in defraying the expenses of the state government by the imposition of a poll tax, it may also, for the same purpose, lay a tax upon occupations, or a privilege tax.

In the cases from this court already referred to,

and kindred cases, it has been stated that the purpose of the framers of the constitution was to provide for economy in the administration of the affairs of state, and for that reason they limited the rate of taxation on property. That is undoubtedly true; but it is also a well-known fact, not only under our territorial statutes but generally in the different states of the Union, that other sources of revenue for state purposes have been resorted to, and a tax upon trades and occupations has been upheld under constitutions similar to our own. And since it is always to be borne in mind that a state constitution is an instrument of limitations upon, and not one of grants of, legislative power, courts should be slow to hold, under a constitution like ours, that the state has no other source of revenue for state purposes except that resulting from a direct tax upon property. Such a conclusion should be reached only where express and unequivocal language in the constitution, too plain to admit of doubt, or the necessary implication from something therein expressed, leaves no other alternative.

4. The point that these sections are not within the title rests solely upon the assumption that the license fee prescribed in section 18 is intended merely as a regulation of the liquor traffic. We have already held that this license fee was imposed for the purpose of producing revenue only, and was not designed as a regulation of a business. This being true, as established by decisions of this court, sections 18 and 19 come clearly within the title, which is "An act in relation to revenue," etc. Two cases from sister states are quite in point: *State v. Ewing,* 22 Kan. 708, 712; *Rosenbloom v. State,* 64 Neb. 342; 57 L. R. A. 922,—a well-considered case, which supports our conclusions generally in this case.

5. It is said that if what section 18 calls a

license fee is in fact a tax levied for revenue, it violates the uniformity clause of section 3 or article X, and also constitutes a levy upon the property of druggists in excess of the limited rate of four mills on the dollar prescribed by section 11 of the same article. By the great weight of authority, if not by all, it is held that the equality and uniformity clauses, such as are found in section 3 of article X, refer solely to a direct or *ad valorem* tax upon property, and are not violated by a specific tax on privileges, occupations, trades or professions. The question is so ruled for this jurisdiction in *Denver City Ry. Co. v. Denver, supra.* In addition to the authorities cited in the opinion in that case, others will be found in notes to the same case as reported in 52 Amer. State Reports, 239. A late case is *State v. Clark,* 30 Wash. 439.

6. Prior to the act of 1895, the general assembly had delegated to municipalities exclusive authority to license, regulate and prohibit the sale of liquors therein, but by this act such grant was expressly made subject to the laws of the state. That this power depending, as it does, upon legislative grant, is subject to recall in the discretion of the general assembly, is too clear for argument; and merely because the delegation in the first place was by permission of the constitution does not affect the question as to the right of the legislature to withdraw the same, even though it had once been made; and if what the general assembly has done in section 18 of the general revenue law is nothing more than a regulation of the liquor traffic instead of the imposition of an occupation tax for the purpose of securing state revenue, it would be entirely competent for the legislature to recall or withdraw from municipalities such power of regulation; but as the general assembly imposed a state tax, former enactments relating to licenses and regulations must be observed, and one

holding a license or permit must pay the tax levied by the late revenue law as a condition precedent to the right to sell thereunder.

While this particular case does not necessarily call for an adjudication of the question, counsel upon both sides desire an expression of opinion from this court upon the applicability of section 18 of the revenue act to the city of Denver. Since counsel representing the druggists' association is now before the court as attorney for defendant with this as a test case of the statute, not only as it affects municipalities organized under our general law, but the city of Denver which operates under a special charter, we have concluded to dispose of the whole matter.

The city of Denver was organized as a municipal corporation under a special territorial act, and its continuance thereunder was authorized by the constitution of the state, and with various amendments to its special charter by the general assembly, it so continued to exist until an amendment to the constitution, now known as article XX, was adopted by the people at the general election of 1902. The amendment disincorporated the city of Denver, and it, with other municipalities, became merged into the new city and county of Denver. However, it contains a provision that until the new form of government for the city therein contemplated is adopted by its citizens, the charter and ordinances of the former city of Denver, as the same existed when the amendment took effect, shall temporarily, and as far as applicable, be the charter and ordinances of the new municipality.

In the then-existing charter of the former city of Denver the city council was given exclusive power to license, regulate and tax all lawful occupations, trades and professions, and exclusive power to license, tax and regulate the selling and giving away of intoxi-

cating and malt liquors, within the city. Session.
Laws 1893, 146. It is said, therefore, by counsel for
defendant, that not only by virtue of this authority
conferred upon the city council by the general assem-
bly, but also by necessary operation of the 20th
amendment, that body has the exclusive power, un-
affected by any law of the state, to tax and regulate
occupations, and to tax, license and regulate all places
where intoxicating liquors are sold within the city
of Denver.

As to the first proposition, we think it clear that,
in so far as the power asserted as belonging to the
city depends upon the special statutory charter, it is,
and at all times heretofore has been, subject to change
by the same authority from which, in the first in-
stance, it was derived. But the power to tax occupa-
tions, conferred by the general assembly upon the
city council of Denver, was merely to enable the city
to produce revenue for municipal, and not for state,
purposes. This power is not interfered with by the
general revenue law in question. The object of the
latter measure is to procure sufficient revenue for
state purposes, and the same occupation, like the same
property, may unquestionably be taxed for both pur-
poses. In other words, it is entirely competent for
the general assembly to tax any occupation it selects
as the subject or object of taxation in order to pro-
cure revenue for state purposes, and at the same, or
any other, time, to delegate to its subordinate local
governments similar power to tax the same occupa-
tion for the purpose of securing revenue for their
local purposes.

It therefore follows, even if exclusive power had
been by the special charter conferred by the general
assembly upon the city council of the city of Denver,
as its agent to tax occupations within that municipal-
ity for state purposes, such delegated power might be

resumed by the general assembly and exercised directly by itself and not through some agency; but since it is clear, as we have said, that the imposition of the tax upon the occupation of druggists provided for in the general revenue act was for the purpose of procuring revenue for the state, it is the exercise of an unquestioned sovereign power that it has never relinquished, and its exercise in this instance is in no wise inconsistent, nor does it interfere, with the former delegation of power to the city council of the city of Denver for an entirely different purpose.

Neither is this revenue act of 1902 in violation of any provision of article XX. In the majority opinion of this court in *People ex rel. v. Sours,* 31 Colo. 369, it was clearly indicated that the general scheme of government therein contemplated is restricted to that of the municipality proper, and does not intrench upon county or state government. It does not purport to nullify the constitution or general laws of the state in so far as they pertain to county or state government, or attempt to interfere with the power of the state in raising state revenue. If there were no specific provision in that amendment upon the subject, such would be its construction.

But, to put the matter beyond question, section 5 of article XX expressly says that "no such charter, charter amendment or measure shall diminish the tax rate for state purposes fixed by act of the general assembly, or interfere in any wise with the collection of state taxes." We have already held that section 18 of the revenue act was a provision for imposing and collecting a state tax which, in connection with the revenue derived from a property tax, was to be used to defray the expenses of the state government. That being true, there is nothing in article XX which brought into being the new city and county of Denver, nor is there anything in the charter of the former city

government under which the new municipality acts until it secures a new charter and new ordinances, prohibitive of an act of the general assembly which imposes a license fee by way of a tax upon lawful occupations within the city of Denver for the purpose of securing state revenue.

7.  The general objection that the section in question violates the letter and spirit of those provisions of the federal and state constitutions which guarantee to every citizen the equal protection of the laws, and prohibit the enactment and enforcement of laws which deny to any citizen due process of law, is untenable.  There is no particular specification wherein these organic provisions are contravened, any further than would appear from the specific objections already considered, and they have been resolved against defendant.

Upon the whole case we are satisfied that the provisions of the revenue law attacked by defendant are constitutional and applicable to the facts of this case.  The judgment is right, and it should be affirmed.                                    *Affirmed.*